# United States Court of Appeals
## For the First Circuit

Nos. 05-1503
    05-2545

JAMES NAPIER,

Plaintiff, Appellant,

v.

F/V DEESIE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Torruella, Lynch and Lipez,
Circuit Judges.

    David B. Kaplan, with whom The Kaplan/Bond Group was on brief, for appellant.
    Joseph A. Regan, with whom Syd A. Saloman and Regan & Kiely LLP, were on brief, for appellee.

July 11, 2006

**TORRUELLA**, **Circuit Judge**. Plaintiff-appellant James Napier ("Napier") filed a suit against defendant-appellee F/V Deesie, Inc. ("Deesie") in the United States District Court for the District of Massachusetts, seeking damages on three counts of maritime law: one count pursuant to the Jones Act, 46 U.S.C. App. § 688; one count of unseaworthiness; and one count for maintenance and cure. Deesie moved for summary judgment on all three claims. The magistrate judge granted summary judgment with regard to the Jones Act and the unseaworthiness claims but denied summary judgment for the claim of maintenance and cure. We find that the magistrate judge erred in granting summary judgment and remand the case for further proceedings consistent with this opinion.

**I.**

In accordance with our standard of review for summary judgment, we present the facts in the light most favorable to Napier. See Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995). Deesie employed Napier as a crewman aboard the F/V DEESIE, a fishing vessel. On or about April 13, 2001, the crew of the F/V DEESIE was fishing approximately 1500 miles south to southeast of Puerto Rico. Napier was attaching baited hooks to the line feeding out of the vessel's stern when an accident occurred in which a rusty, six-inch hook impaled the lower left portion of his abdomen. Using bolt cutters and a razor, the captain and Napier cut out the hook. Napier quickly doused the wound with peroxide, applied a

bandage, and returned to work. The ship's first aid kit contained aspirin, and Napier took aspirin, as well as Motrin, to treat the pain resulting from the injury. Eight days after the accident, Napier experienced sudden pain and loss of breath. The captain attempted to call in an air rescue; this, however, was not possible due to the location of the F/V DEESIE.

Upon arrival in San Juan, the captain sent Napier to a doctor who diagnosed him with an infection and prescribed antibiotics. Two days later, on or around April 21, 2001, Napier developed severe stomach pains, began vomiting blood, and was taken by ambulance to University Hospital in Puerto Rico. He was admitted with gastrointestinal bleeding, and physicians discovered that Napier had suffered a perforated duodenal ulcer, which required two surgeries and a one-month stay at University Hospital. The physicians also noted in Napier's medical record that Napier had taken cocaine and heroin on the day prior to his admission to the hospital.

On December 27, 2002, Napier filed suit against Deesie seeking damages on three counts: one count pursuant to the Jones Act, one count of unseaworthiness, and one count for maintenance and cure.[1] Deesie moved for summary judgment, after discovery, on

---

[1] The Jones Act allows seamen to recover for all injuries caused by their employer's negligence, whether or not that negligence creates an unseaworthy condition. An unseaworthy condition exists when a vessel or its appurtenances are not reasonably fit for their intended purposes, although "reasonably fit" does not require a

August 2, 2004. Deesie and Napier each filed affidavits from their respective medical experts to establish whether the fishhook accident was the cause of the perforated ulcer. Deesie submitted the affidavit of Dr. Michael D. Apstein ("Dr. Apstein"), a specialist in gastroenterology and internal medicine. After reviewing all of the pertinent medical records and historical background, Dr. Apstein concluded that the perforated ulcer was not caused by the fishhook because, based on the location of the injury and the size of the hook, it would have been nearly impossible for the hook to have reached the duodenum. Rather, Dr. Apstein suggested that the perforated ulcer was more likely than not caused by the reported cocaine use.

Napier also submitted an expert medical report, authored by Dr. Roberto Feliz ("Dr. Feliz"). Dr. Feliz agreed that 'the fishing hook itself did not directly lead to the duodenal perforation since it was not long enough to reach the posteriorly

_____

ship to be accident-free. A claim of unseaworthiness compensates seamen for injuries caused by an unseaworthy condition found on board a vessel or its appurtenances. However, liability for unseaworthiness does not require any showing of a defendant's negligence. The right to maintenance and cure allows seamen to recover payments for food and lodging ("maintenance") and any necessary health-care expenses ("cure") while recovering from injury or illness that occurred while in service of the ship. The right to recover maintenance and cure is generally without any regard to fault; however, a seaman may forfeit his entitlement by engaging in gross misconduct. See Usner v. Luckenback Overseas Corp., 400 U.S. 494 (1971); Mitchell v. Trawler Racer, Inc., 362 U.S. 539 (1960); Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449 (1st Cir. 1996).

-4-

located duodenum in the abdomen." Dr. Feliz, however, also explained several medically accepted factors that can potentially lead to ulcers, focusing in particular on the effects of nonsteroidal anti-inflammatory drugs (NSAIDs). He stated that NSAIDs "such as aspirin, Advil, Naprosyn, Motrin" and steroids such as prednisone can cause ulcers by disrupting the normal mucosal defense and repair system, making the mucosa more susceptible to the attack of gastric acid. Dr. Feliz went on to describe in more detail the link between Motrin and ulcers in patients with a history of ulcers. He stated that Napier "appeared to have been treated" with aspirin and Motrin and concluded that there was a "causal relationship between the injury sustained with the hook and the subsequent development of a duodenal ulcer." Additionally, Dr. Feliz contradicted Dr. Apstein's statement that the use of cocaine could possibly produce a perforated ulcer within one day of consumption.

On March 3, 2005, the magistrate judge granted Deesie's motion for summary judgment as to the Jones Act and unseaworthiness claims but denied the motion as to the claim for maintenance and cure. The magistrate judge excluded the testimony of Dr. Feliz for failure to rest upon an adequate factual foundation. Specifically, the magistrate judge ruled that there was insufficient factual evidence to support the claim that Napier had ingested aspirin or Motrin. In particular, he looked to the phrase "appeared to have

been treated" in Napier's expert report to demonstrate that the report was based on conjecture. Moreover, the magistrate judge found that the record was devoid of any reference to Motrin, and that the only mention of aspirin was the captain's testimony that there was aspirin aboard the ship. Without Dr. Feliz's testimony to establish the fishhook accident as the cause of the ulcer, the magistrate judge found that Napier had produced no evidence as to causation and entered partial summary judgment in favor of Deesie.

This was plainly error in light of an admission made by the defendant. In Deesie's amended motion for summary judgment, Deesie stated the following: "For the purposes of this motion, we assume that (a) the plaintiff took aspirin and Motrin at some point following the hooking incident and (b) the consumption of these over-the-counter medications caused his injury." The magistrate judge's ruling was also erroneous because Napier, in a supplemental affidavit that was filed with his opposition to Deesie's amended motion for summary judgment, stated that he took aspirin and Motrin, an allegation that should have been taken as true by the magistrate judge for purposes of deciding upon the summary judgment motion. See DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) ("In adjudicating a motion for summary judgment, a district court construes the facts 'in the light most amiable to the nonmovant[] and indulges all reasonable inferences favorable to

[him].'" (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990)).

On March 17, 2005, Napier moved for reconsideration under Fed. R. Civ. P. 59(e). As part of the motion for reconsideration, counsel for Napier submitted an affidavit explaining that Napier had informed counsel that he took aspirin and that counsel had relayed that information to Dr. Feliz. Dr. Feliz also presented an affidavit confirming that Napier's counsel informed him that Napier had ingested aspirin following the accident. Dr. Feliz further clarified that the phrase "appeared to have been treated" was superfluous; his intention was to convey that he was informed prior to issuing his opinion that the patient had taken aspirin.

Upon consideration of the additional affidavits, the magistrate judge found that there was sufficient evidence for Dr. Feliz to base his testimony on the fact that Napier had taken aspirin. However, the magistrate judge held that although the medical report submitted by Dr. Feliz attested to the dangers of Motrin and Motrin taken in combination with aspirin, it did not support the claim that aspirin alone could cause an ulcer. The magistrate judge thus found that Napier had not presented sufficient evidence on the issue of causation to avoid summary judgment on the Jones Act and unseaworthiness claims. The magistrate judge also gave two alternative grounds for granting summary judgment. First, Napier had not shown that anyone on board

could have known of Napier's history of ulcers.  Second, Napier presented no evidence to suggest that the presence of aspirin could make a vessel unseaworthy.

## II.

### A.  Standard of Review

In this appeal, Napier is appealing from two orders: 1) the initial summary judgment order, and 2) the denial of Deesie's motion for reconsideration (which is really a motion to amend judgment under Fed. R. Civ. P. 59(e)).  We review the grant of summary judgment de novo.  Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993).  We review the denial of a motion to amend judgment for abuse of discretion.  Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994).

Regarding our review of the summary judgment decision, we are authorized to reverse the lower court if, after viewing the facts and making all inferences in favor of the non-moving party, the evidence on record is "sufficiently open-ended to permit a rational fact finder to resolve the [liability] issue in favor of either side."  Coyne, 53 F.3d at 457 (internal citations and quotation marks omitted).  Although this case comes before us under our maritime jurisdiction, the standard for granting summary judgment motion in an admiralty case is identical to that applied in non-admiralty cases.  Cerqueira v. Cerqueira, 828 F.2d 863, 864-65 (1st Cir. 1987).

Summary judgment is appropriate when one party has failed to raise a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A genuine issue exists when, based on the evidence, a reasonable jury could resolve the issue in favor of the non-moving party. Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P. R., 167 F.3d 1, 7 (1st Cir. 1999). Further, a fact is material if it has the "potential to affect the outcome of the suit." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). Here, the burden rests on the moving party, Deesie, to demonstrate that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). As we have noted, the role of the court at the summary judgment stage is to "examine[] the entire record 'in the light most flattering to the nonmovant and indulge all reasonable inferences in that party's favor.'" Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997) (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994)). Throughout this process, the judge must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

## B.  Expert Testimony

We begin with the motion for summary judgment and the magistrate judge's interpretation of Dr. Feliz's expert testimony. As we have said, the magistrate judge erred in entering summary judgment in the first place, given the admission by the defendant that Napier "took aspirin and Motrin at some point following the hooking incident" and Napier's own affidavit -- the contents of which were to be accepted as true for purposes of the summary judgment motion -- stating that he had ingested those drugs.

We therefore turn to the motion for reconsideration.  In assessing the motion for reconsideration, the magistrate judge determined that the additional affidavits filed were sufficient to demonstrate that there was a factual basis for Dr. Feliz to believe that Napier had taken aspirin.  The magistrate judge, however, found no such basis for believing that Napier had taken Motrin, as the entire record was devoid of any mention of the drug or indication that Napier had access to the drug.

This conclusion was also contrary to both the defendant's admission and Napier's own statement that he had taken Motrin.  But even if the defendant had not made such an admission and Napier had not made his statement and it was still in doubt that Napier had taken Motrin, we believe that Dr. Feliz's report supported the contention that aspirin alone can cause ulcers (which, the magistrate judge pointed out, was necessary for Napier to survive

-10-

Deesie's summary judgment motion).  Even if the magistrate judge was correct in asserting that Dr. Feliz made several conclusory statements concerning Motrin and Motrin taken in combination with aspirin as the specific cause of Napier's ulcer, this does not negate the evidentiary value of the rest of his affidavit.  In particular, we highlight Dr. Feliz's statement that "NSAID nonsteroidal anti-inflammatory medications and steroid usage such as aspirin, Advil, Naprosyn, Motrin and prednisone causes ulcers in the same mechanism as described above."  The unambiguous meaning of Dr. Feliz's statement is that any of these individual medications alone is sufficient to cause an ulcer.  Therefore, the magistrate judge erred in finding that Dr. Feliz's report did not support the claim that aspirin alone could cause an ulcer.

## C.  Jones Act Claim

The Jones Act provides seamen with a cause of action against employers when "an employer's failure to exercise reasonable care causes a subsequent injury even where the employer's negligence did not render the ship unseaworthy." Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996) (citing Toucet v. Maritime Overseas Corp., 991 F.2d 5, 10 (1st Cir. 1993)).  While Napier must establish all the elements of a common-law negligence claim, the burden to prove causation under the Jones Act is "featherweight."  Toucet, 991 F.2d at 10 (citations omitted).  Napier need only demonstrate that the vessel's

"negligence played any part, even the slightest, in producing the injuries for which the plaintiff seeks damages." Connolly v. Farrell Lines, Inc., 268 F.2d 653, 655 (1st Cir. 1959) (citing Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506 (1957)).

The magistrate judge granted summary judgment for this claim on the ground that Napier had presented no evidence to show a causal relationship between the fishhook accident and his ulcer. Taking all factual inferences in favor of Napier, he has shown that aspirin was available on board the vessel and that he took aspirin to treat the pain from the fishhook accident. Further, the expert testimony provided by Napier indicates that aspirin alone can cause ulcers. For purposes of avoiding summary judgment, Napier has carried his burden to establish the hooking incident as the cause of his ulcer.

As an additional ground for denying the Rule 59(e) motion, the magistrate judge found that even if the captain or another crew member had given aspirin to Napier, Napier had not shown that that person knew that Napier had a history of ulcers. However, the giving of aspirin was not the negligent act. Napier alleged negligence in the circumstances surrounding the fishhook accident, which the magistrate judge did not address. Napier's taking of aspirin is relevant to linking the fishhook accident to his ulcer. As we described above, we think a jury could find the requisite causation between the fishhook accident and the ulcer

-12-

even if the ship's captain and crew did not know Napier's medical history.

### D. Unseaworthiness

Unseaworthiness has been defined by the Supreme Court as a separate cause of action and unique from a claim under the Jones Act. Ferrara, 99 F.3d at 452 (1st Cir. 1996) (quoting Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 498 (1971)). The doctrine of unseaworthiness places an absolute duty upon shipowners to furnish a "seaworthy" ship and compensate seamen for injuries caused by any defect in a vessel or its appurtenant appliances or equipment. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 548-49 (1960); Hubbard v. Faros Fisheries, Inc., 626 F.2d 196, 199 (1st Cir. 1980). A shipowner is not bound to provide an accident-free ship, but rather the duty is "to furnish a vessel and appurtenances reasonably fit for their intended use." Mitchell, 362 U.S. at 550. That duty extends to all situations aboard the ship, whether transient or permanent, developing before the ship leaves its home port or at sea. Id. at 549-50. The absolute duty is such that even a temporary and unforeseeable malfunction or failure of a piece of equipment is sufficient to establish an unseaworthy condition. Ferrara, 99 F.3d at 453 (quoting Hubbard, 626 F.2d at 199).

Liability based upon a claim of unseaworthiness does not require a showing of negligence, but instead imposes a strict

-13-

liability regime upon shipowners. "The reason, of course, is that unseaworthiness is a condition, and how that condition came into being -- whether by negligence or otherwise -- is quite irrelevant to the owner's liability for personal injuries resulting from it." Usner, 400 U.S. at 498. For liability to exist, a plaintiff must first establish the existence of an unseaworthy condition on board the vessel and then demonstrate the unseaworthy condition to be the proximate cause of his injury. Ferrara, 99 F.3d at 453. Proximate cause requires that the unseaworthy condition is the "cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the results complained of, and without which it would not have occurred." Brophy v. Lavigne, 801 F.2d 521, 524 (1st Cir. 1986).

The doctrines of proximate cause and superseding cause are applicable in admiralty law. See Exxon, Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 832 (1996). Napier must demonstrate that Deesie's negligence in allowing the fishhook accident is the proximate cause of the injury in order to recover.[2] In order for the negligent act to constitute proximate cause, the act or omission must be a substantial factor in bringing about harm and the injury incurred must have been a reasonably foreseeable

---

[2] Because negligence claims are generally based upon state law, "courts sitting in admiralty may draw guidance from . . . the extensive body of state law applying proximate causation requirements and from treaties and other scholarly sources." Exxon, 517 U.S. at 839.

-14-

consequence.  See Veilleux v. Nat'l Broad. Co., 206 F.3d 92, 123-24 (1st Cir. 2000).  A determination of proximate cause focuses primarily on foreseeability and exists when a "prudent person reasonably could anticipate" the resulting injury.  Malavé-Félix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir. 1991) (citing Marshall v. Pérez-Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987)).  However, Deesie can escape liability in the face of proximate causation by proving the existence of an unforeseeable intervening cause.  Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 296 (1st Cir. 1999).  An intervening cause is a new and independent cause of the harm which is neither anticipated nor reasonably foreseeable by the defendant: it must operate independently of and occur after the conclusion of the defendant's negligent conduct.  Malavé-Félix, 946 F.2d at 972; Marshall, 828 F.2d at 848.

The magistrate judge granted summary judgment for this claim on the ground that Napier had presented no evidence to show a causal relationship between the unseaworthiness of the vessel and his ulcer.  For the reasons discussed above, Napier has presented sufficient evidence of a causal connection between the fishhook accident and his ulcer to avoid summary judgment.

Deesie, however, argues that it cannot be held liable because the aspirin treatment constitutes an intervening cause as a matter of law.  Deesie argues that Napier's ulcer was not a foreseeable result of providing aspirin on board the ship and that

-15-

Napier's decision to take aspirin despite his history of ulcers was an independent cause of the harm. We think this is properly an issue for the jury. A reasonable jury may well conclude that Napier took matters into his own hands by ingesting a medicine contraindicative for persons with a history of ulcers. However, that same jury could find adverse consequences from medical treatment to be a foreseeable risk arising from a hooking incident at sea. The issues of foreseeablility and superseding cause are properly for the jury to decide when there may be reasonable differences in opinion. Springer v. Seaman, 821 F.2d 871, 876 (1st Cir. 1987); see also Swift v. United States, 866 F.2d 507, 510 (1st Cir. 1989) ("Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by, and peculiarly within the competence of, the factfinder."); Putnam Res. v. Pateman, 958 F.2d 448, 460 (1st Cir. 1992) ("When, as here, the existence of proximate cause turns on an issue of superseding causation . . . the jury's role may be especially significant.").

As an additional ground for denying the Rule 59(e) motion, the magistrate judge found that Napier had presented no evidence showing that the presence of aspirin aboard the F/V DEESIE rendered the vessel unseaworthy. However, Napier alleged that the vessel was unseaworthy because of the circumstances surrounding the accident in which a fishhook became embedded in his abdomen.

-16-

Because the magistrate judge did not address the unseaworthiness alleged by Napier, summary judgment is not appropriate on this alternative ground.

### III.

For the reasons given above, we reverse the grant of summary judgment on the Jones Act and unseaworthiness claims and remand the case for proceedings consistent with this opinion.

**<u>Reversed and Remanded</u>**.