# United States Court of Appeals
## For the First Circuit

No. 06-1048

NEW HAMPSHIRE INSURANCE COMPANY,

Plaintiff, Appellee,

v.

NICHOLAS DAGNONE,

Defendant-Counterclaimant, Appellant.

v.

HINCKLEY YACHT SERVICES,
THE TALARIA COMPANY LLC,

Third-Party Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Howard, Circuit Judge.

John D. Deacon, Jr., for appellant.
James E. Mercante, with whom Rubin, Fiorella & Friedman, LLP,
was on brief, for appellee.

February 2, 2007

**TORRUELLA**, **Circuit Judge**.  Nicholas Dagnone ("Dagnone") renewed his marine insurance policy (the "policy") from New Hampshire Insurance Company ("NHIC") on July 31, 2003.  On December 6, 2003, Dagnone's boat was damaged during a storm, and Dagnone filed a claim with NHIC.  NHIC denied the claim, and filed the present action seeking a declaratory judgment that the policy does not cover Dagnone's claim.  The district court granted summary judgment in favor of NHIC.  After careful consideration, we affirm the judgment of the district court.

## I. Background

Dagnone owns a forty-nine foot 1993 bluewater yacht (the "yacht").  In 1997, Dagnone purchased marine insurance on his yacht from NHIC, and renewed the policy every year from 1997 through 2003.  In 2003, Dagnone renewed the policy once more, so that the yacht would be covered from September 18, 2003 until September 18, 2004.  In the section entitled "General Conditions and Exclusions," the renewed policy stated:

> 1. RESTRICTIONS ON THE USE OF YOUR YACHT: There are certain restrictions on the use of your yacht under this policy.  We shall not cover losses that occur while your yacht is being used in any way that is prohibited by this policy.
> . . .
>> (d) Your yacht must be laid-up and out of commission during the period shown on the declarations.

The "declarations" to which the policy refers state:

> Lay-up Warranty: Waranteed [sic] that the described yacht shall be laid up and out of commission and not used by the insured for any purpose during the period from 10/31 (at 12:01 am) to 4/15 (12:01 am).

Dagnone's yacht was docked at the Goat Island Marina in Newport, Rhode Island ("Goat Island") during the spring and summer of 2003. For the winter, Dagnone decided to place the yacht in dry storage at Hinckley Yacht Services ("Hinckley"), located in Portsmouth, Rhode Island. Dagnone contracted with a local captain, Ted Beaumont ("Beaumont"), to winterize his yacht and take it from Goat Island to Hinckley. On November 22, 2003, Beaumont motored Dagnone's yacht to Hinckley, docked the yacht there, and left the keys in the yacht, per Hinckley's instructions. At this point, Beaumont had performed all of the procedures for winterizing the yacht except for anti-freezing the engines. Hinckley informed Dagnone that there were other boats waiting to be hauled out for dry storage and that the boats would be hauled in the order in which they arrived. Beaumont stated that he would finish winterizing the yacht once it was hauled out. Dagnone's yacht remained docked at Hinckley from November 22 until December 6, 2003, when a storm struck the marina. During the storm, Dagnone's yacht broke loose from the dock and suffered $38,327 of damage according to Dagnone's estimate. After the storm, Hinckley hauled out the yacht, and Beaumont completed the winterization procedures.

Dagnone promptly filed a claim with NHIC for the damage to his yacht.  On April 7, 2004, NHIC denied the claim, asserting that Dagnone had failed to comply with the provisions in the policy requiring that the yacht be "laid up and out of commission" between October 31 and April 15.

On April 9, 2004, NHIC filed a complaint against Dagnone, seeking a declaratory judgment that Dagnone's claim was not covered by the policy.  Dagnone filed a counterclaim against NHIC seeking coverage under the policy.[1]  NHIC and Dagnone both moved for summary judgment in their favor.  The district court denied Dagnone's motion for summary judgment and granted summary judgment in favor of NHIC.

## II. Discussion

### A. Standard of Review and Governing Law

We review a district court's grant of summary judgment de novo, examining all the facts and making all reasonable inferences in favor of the non-moving party.  Napier v. F/V Deesie, Inc., 454 F.3d 61, 65-66 (1st Cir. 2006).  Summary judgment is appropriate when there are no genuinely disputed material facts and the moving party is entitled to judgment as matter of law.  Fed. R. Civ. P. 56(c).

---

[1]  Dagnone also asserted a Rhode Island law claim against NHIC and filed a third-party complaint against Hinckley, neither of which is the subject of this appeal.

A dispute over the interpretation of a marine insurance contract falls within our admiralty jurisdiction, and as such, we will apply state law unless an established federal admiralty rule governs.  Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006).  Because there is no established federal admiralty rule governing the interpretation of marine insurance contracts, we look to state law to interpret the policy.  Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004).

Both parties suggest that we look to New York law to aid in the interpretation of the contract because the contract was concluded in New York and both parties are New York residents.  New York law generally construes insurance contracts liberally in favor of the insured, but "where the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning."  Government Employees Ins. Co. v. Kligler, 42 N.Y.2d 863, 864 (1977).  Thus, if the policy clearly and unambiguously excludes coverage for the damage to the yacht, NHIC is entitled to summary judgment.

## B. "Being used in any way that is prohibited by this policy"

Dagnone's first argument is that the exclusion in the policy for yachts that are not "laid up and out of commission" does not apply here because the exclusion only applies if the damage occurs while a yacht is "being used."  Dagnone argues that his yacht was not "being used" on the night it was damaged and as such,

the policy exclusion cannot apply. Dagnone argues that interpreting the contract any other way would render the words "being used" surplusage, which New York courts disfavor. See, e.g., Lawyers' Fund for Client Protection v. Bank Leumi Trust Co., 94 N.Y.2d 398, 404 (2000) ("Bank Leumi's interpretation would render the second paragraph superfluous, a view unsupportable under standard principles of contract interpretation.").

Dagnone's interpretation of the contract would require us to "superimpose" the kind of "unnatural or unreasonable construction" that New York courts have cautioned against. Maurice Goldman & Sons v. Hanover Ins. Co., 80 N.Y.2d 986, 987 (1992). The insurance contract is clear: the policy does not cover damage to the yacht if it was "being used in any way that is prohibited by th[e] policy." It is true that Dagnone was not taking the yacht out for a brisk December cruise on the night it was damaged, however, the vessel was still fully operable. The yacht was still "being used" in the sense that it was in the water, having just been motored to Hinckley, and awaiting hauling out, rather than being "laid up and out of commission," as required, i.e., being "inoperable." To require some higher degree of use for the exclusion to apply would be contrary to the unambiguous meaning of the provision and would also defeat its clear intent: to encourage owners not just to stop using their boats during the winter, but to take affirmative steps to winterize their boats so that they are

"laid up and out of commission."  Thus, we find that the policy's exclusions clause is susceptible of only one reasonable interpretation: the policy will not cover losses during the specified months if the boat is not "laid up and out of commission."[2]

## C. **"Laid up and out of commission"**

Dagnone's second argument is that, contrary to the conclusion of the district court, the yacht was in fact "laid up and out of commission" the night it was damaged.  As such, Dagnone argues, the exclusion claimed by NHIC cannot apply.  Dagnone directs us to Providence Washington Ins. Co. v. Lovett, 119 F. Supp. 371, 374 (D.R.I. 1953), in which a district court looked to local practice at Rhode Island marinas to determine whether a boat had been laid up and out of commission.  Dagnone points out that in Lovett, the court found that a boat which had been left in wet storage in accordance with the local practices had been laid up and out of commission, as required by a marine insurance policy.  Id. at 375.

As an initial matter, we note that Lovett is of low persuasive value.  It was decided in 1953, and we can imagine that the practices for laying up a boat and putting it out of commission

_____

[2]  Because we find that the policy by its terms would be breached if the yacht was not laid up and out of commission during the winter months, we see no need to address NHIC's argument that failure to strictly comply with a warranty in a marine insurance contract precludes recovery under the policy.

may have changed in the past fifty years. Furthermore, the decision in Lovett was based on the local custom and practice at a specific marina, Port Edgewood, whereas Dagnone's yacht was located at Hinckley Marina on the night of the storm.

The fatal flaw in Dagnone's reasoning, however, is that his dispute with NHIC is not whether the yacht had been hauled out of the water, but whether it had been fully winterized (and thus placed out of commission). Both parties appear to agree that full winterization was required to render the yacht laid up and out of commission. Even Lovett states that if it was not possible to immediately haul a boat out of the water, it was local practice to lay the boat up by "plac[ing] such boats, completely winterized, in slips on either side of the piers in wet storage for a reasonable length of time pending hauling ashore." Id. at 374 (emphasis added). Beaumont and the manager of Hinckley both stated that in local practice, the final step in winterizing a boat was to anti-freeze the engines, and Dagnone admitted that he had anti-freezed his engines as part of the winterization process in years past. All parties agree that when the yacht was damaged on December 6, 2003, its engines had not yet been anti-freezed. Thus, the district court correctly concluded that the yacht had not been fully winterized, and thus was not laid up and out of commission on the night it was damaged. Because the policy excludes claims for damage that occurs when a boat is being used during December if the

boat is not laid up and out of commission, NHIC is not responsible for covering the damage to the boat.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the judgment of the district court.

**<u>Affirmed</u>**.