# United States Court of Appeals
## For the First Circuit

No. 07-2627

DAPHENE PELLETIER,

Plaintiff, Appellant,

v.

YELLOW TRANSPORTATION, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, <u>U.S. District Judge</u>]

Before

Torruella, Baldock,[*] and Lipez,
<u>Circuit Judges</u>.

<u>Thad B. Zmistowski</u>, with whom <u>Mark D. Beaumont</u> and <u>Eaton Peabody</u>, was on brief for appellant.
<u>Carl H. Gluek</u>, with whom <u>Julie L. Pietrzen</u> and <u>Frantz Ward LLP</u>, was on brief for appellee.

December 10, 2008

---

[*] Of the Tenth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Plaintiff-Appellant Daphene Pelletier brought suit against her employer, Defendant-Appellee Yellow Transportation ("Yellow"), alleging federal and state law claims of sex discrimination, age discrimination, and whistleblower retaliation.  Yellow moved for summary judgment for lack of subject matter jurisdiction and to compel arbitration, based upon an arbitration clause contained in a Dispute Resolution Agreement ("DRA") that Pelletier signed when applying for a position with Yellow.  The district court granted summary judgment in Yellow's favor and compelled arbitration.  Pelletier appeals, and contends that the district court erred because the DRA was not enforceable.  After careful consideration, we affirm.

## I.  Background

In reviewing an entry of an order of summary judgment, the Court examines all facts and makes all reasonable inferences in favor of the non-moving party.  N.H. Ins. Co. v. Dagnone, 475 F.3d 35, 37 (1st Cir. 2007).

Pelletier has worked in the trucking industry for several years.  Yellow is a motor carrier that provides transportation services throughout North America.  In 2000, Pelletier was hired by Bruce Jacobs, through a temporary staffing agency, to work at Yellow's Bangor terminal as a temporary employee.  In March 2003, the Bangor terminal closed and Pelletier lost her job.  Yellow assigned Jacobs to manage the Waterville terminal.

On or about July 31, 2003, Pelletier applied for an outbound clerical position with Yellow at the Waterville terminal. The application for employment (the "Application") contained the following paragraph:

> If hired, I agree as follows: I will comply with all of Yellow's rules, regulations and code of conduct. My employment and compensation are terminable at will, are for no definite period, and can be terminated, with or without cause, and with or without notice, by either Yellow or myself. No implied or oral agreements contrary to the express language of this agreement are valid. No supervisor, manager or other representative of Yellow, other than its president, has any authority to make any agreement for employment for any specified period of time or to make any agreement contrary to the foregoing and any such agreement must be in writing and signed by Yellow's president and me. <u>This agreement is the entire agreement between Yellow and me regarding my right and Yellow's right to terminate employment, and this agreement takes the place of all prior or contemporaneous agreements, representations, and understandings between Yellow and me.</u>

(emphasis added). The Application further stated that it "will be considered active for a maximum of thirty (30) days. If you wish to be considered for employment after that time, you must reapply."

At the same time, and in addition to the Application, Jacobs provided Pelletier with the DRA. Jacobs informed Pelletier that Yellow would not hire her unless she signed the DRA, and Pelletier did so. The DRA stated, in relevant part, that both Pelletier and Yellow would:

> resolve all disputes, claims, or controversies, arising out of, or related to, my application for employment, my employment or the cessation of my employment with Yellow that would otherwise require or allow resort to a court or other governmental tribunal ("Employment Claims") exclusively by final and binding arbitration before a neutral arbitrator.

"Employment Claims" were defined to include "claims of discrimination, harassment or retaliation . . . brought against Yellow . . . whether based on local, state, or federal laws or regulations, or on tort, contract or equitable law, or otherwise."

On September 3, 2003, over thirty days after the date on which Pelletier signed the Application and the DRA, Yellow hired Pelletier as a Terminal Support Assistant. On April 9, 2004, she became Operations Supervisor at the Waterville Terminal, an exempt salaried position. Pelletier did not formally apply for the Operations Supervisor position, nor did she execute a new DRA in connection with the position.

On May 12, 2006, Pelletier's employment with Yellow was terminated. Pelletier then filed this action in federal district court, alleging: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Maine Human Rights Act (Count I); (2) age discrimination under the Maine Human Rights Act (also Count I); and (3) whistleblower retaliation under the Maine Human Rights Act (Count II). Yellow filed a motion for summary judgment, or in the alternative, a motion to compel arbitration.

-4-

The district court granted summary judgment in Yellow's favor and compelled arbitration.  Pelletier now appeals.

## II.  **Discussion**

We review the entry of an order of summary judgment de novo.  See Dagnone, 475 F.3d at 37.  We likewise review de novo an order compelling arbitration where the appeal involves solely legal issues as to the enforceability of an arbitration clause.  See InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003) (reviewing refusal to compel arbitration de novo where the case concerned "'abstract questions as to whether particular disputes do (or do not) come within the four corners of an expressly limited arbitration provision'" (quoting Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 18-19 (1st Cir. 2000))).

Pelletier contends on appeal that the district court erred because the DRA was not enforceable.  She presents two arguments against its enforceability.  We do not find either argument persuasive.

Pelletier first contends that the DRA is unenforceable because of the merger clause in the Application.[1]  Pelletier argues that the merger clause, which states that the Application "is the entire agreement between Yellow and me regarding my right and

---

[1]  Yellow contends that Pelletier failed to raise this argument in her opposition to Yellow's motion, and therefore waived it. Pelletier counters by arguing that she raised the issue of the merger clause precluding the DRA.  We need not address the issue, as the case is easily disposed of on the merits.

Yellow's right to terminate employment," nullifies the DRA, as the DRA was signed either "prior" to or "contemporaneous[ly]" with the Application. Yellow disagrees. Following the district court, Yellow argues that the Application concerns the "right to terminate employment" (emphasis added), while the DRA only provides that any issue regarding termination of employment will be resolved by arbitration. See Pelletier v. Yellow Transp., Inc., 503 F. Supp. 2d 397, 403 (D. Me. 2007).

The distinction, while subtle, is correct. The DRA does not expressly define or limit Yellow's "right" to terminate. Instead, the DRA only defines the forum for all disputes concerning the right to termination. As the Third Circuit has noted in another context, "a contractual clause selecting either a judicial or an arbitral forum for the resolution of disputes establishes a legal right which is analytically distinct from the rights being asserted in the dispute to which it is addressed." Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 195 (3d Cir. 1983), overruled on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989) (emphasis added). Thus, the merger clause, which precludes agreements over the parties' "right to terminate," does not nullify the DRA, which only deals with the mechanism for resolving disputes.

Pelletier further argues that the merger clause in the Application is not so limited. As Pelletier emphasizes, the

-6-

Application is the entire agreement "regarding [the] right to terminate." (emphasis added). Consequently, Pelletier contends that the DRA, while not necessarily conflicting with Yellow's right to terminate, nevertheless "regard[s]" its right to terminate, since it "concern[s]" or is "[i]n reference to" that right. See American Heritage Dictionary 1040 (2d College ed. 1991) (defining "regarding"). Moreover, Pelletier argues that the Application is a contract of adhesion, and under the doctrine of contra preferentum under Maine law,[2] any ambiguities in the Application and the DRA should be construed against the "maker of [the] instrument." See Barrett v. McDonald Invs., Inc., 870 A.2d 146, 150 (Me. 2005).

Pelletier's argument as to the "regarding" language in the Application has a certain appeal. Nevertheless, her argument falters. As with all contracts, the Court must interpret the agreements "to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to the be accomplished." Biddleford Internet Corp. v. Verizon New Eng., Inc., 456 F. Supp. 2d 165, 171-72 (D. Me. 2006) (discussing Maine contract law) (internal quotation omitted). Based on a review of the Application and DRA, we find that the merger clause in the

---

[2] The parties disagree as to what law applies to the Application and the DRA. Pelletier contends that Maine law applies. Even if we apply Maine law, Pelletier's argument has no merit.

Application unambiguously does not preclude the DRA. As a result, we do not have to address whether the Application or the DRA constitute contracts of adhesion, or whether the doctrine of contra preferentum applies.

Here, in the same paragraph as the merger clause, the Application provides that the employment Pelletier sought was at-will, or terminable "with or without cause." Later in the paragraph, the Application disclaims any "implied or oral agreements" suggesting otherwise, as well as agreements made by others without the authority to do so. As this Court has emphasized, "[b]lack letter law teaches that 'a construction which comports with the Agreement as a whole is to be preferred even if it be thought that certain language, viewed only by itself, more readily suggests something else.'" See Fashion House, Inc. v. K-mart Corp., 892 F.2d 1076, 1084 (1st Cir. 1989) (quoting Spartans Indus., Inc. v. John Pilling Shoe Co., 385 F.2d 495, 499 (1st Cir. 1967)) (emphasis added). Accordingly, though the word "regarding" could be read broadly in some circumstances, here the entirety of the Application demonstrates unambiguously that it is limited to anything "regarding" the at-will status of the employment Pelletier sought.

In contrast to the Application, the DRA does not speak to the at-will status of the employment at all. Moreover, the DRA has a broader scope, including all disputes arising out of "my

application for employment, my employment, or the cessation of my employment with Yellow."  To read the "regarding" language in the all-encompassing way that Pelletier urges to nullify a DRA that is both tangential to, and broader then, the at-will status of the position Pelletier applied to, would run contrary to the "subject matter, motive, and purpose" of both agreements.  See Biddleford Internet Corp., 456 F. Supp. 2d at 171-72 (internal quotation omitted).

Second, and in the alternative, Pelletier contends that the DRA lapsed before Yellow hired Pelletier.  The argument has two steps.  As to step one, Pelletier argues that the DRA merged into the Application to constitute one contract.  Under Maine law:

> The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purposes, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument.

Hilltop Cmty. Sports Ctr., Inc. v. Hoffman, 755 A.2d 1058, 1062 (Me. 2000) (quoting Kandlis v. Huotari, 678 A.2d 41, 43 (Me. 1996)).  According to Pelletier, because the Application and the DRA were signed at the same time, and because they were both conditions of employment, they should be construed as "one contract or instrument."

As to step two, Pelletier points out that the Application contains a provision that states that the application "will be

-9-

considered active for a maximum of thirty (30) days," such that Pelletier had to "reapply" in order "to be considered for employment after that time." Pelletier argues that both the Application and DRA lapsed on August 30, 2003, four days before she was actually hired. In the alternative, Pelletier argues that the DRA is ambiguous as to its duration, and, accordingly, should be construed against Yellow and in accordance with Pelletier's interpretation.

Pelletier does not get past step one. As the district court noted, the DRA <u>itself</u> does not contain any language concerning its duration, and although signed contemporaneously with the Application, the DRA, by its terms, was "not contingent on any offer of employment being extended." <u>Pelletier</u>, 503 F. Supp. 2d at 402. In fact, contrary to what Pelletier insists, the DRA applies to disputes "arising out of, or related to, my application for employment," such that it applies regardless of the status of Pelletier's Application or her employment with Yellow. The Court declines to merge the two agreements when the clear and unambiguous intent of both agreements show that they are two separate agreements. <u>Hilltop Cmty. Sports Ctr., Inc.</u>, 755 A.2d at 1062 (no merging of agreements where "contrary intention" exists). Accordingly, the Court does not need to address whether the duration of the DRA was ambiguous.

### III.  <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Yellow and its order compelling arbitration.

**<u>Affirmed</u>**.