OPINION OF THE COURT
 

 Ciparick, J.
 

 In May of 1993, Schwartz, Gutstein and Associates, a law firm representing the estate of Marcial Valentin, Sr. (Estate) in a wrongful death action, forged the indorsement of Marcial Valentin, Jr., the administrator of that Estate, on a check made jointly payable to the Estate and the law firm. The check represented the proceeds of a settlement of that action with Progressive Insurance Company. Schwartz, Gutstein deposited the check in its trust account maintained at Bank Leumi Trust Company of New York, but the firm never paid the Estate its share of the proceeds. Instead, it abandoned the practice of law and filed for bankruptcy.
 

 
 *402
 
 In 1995, the Estate filed a claim with the Lawyers’ Fund for Client Protection, which pursuant to Judiciary Law § 468-b, awarded the Estate $31,750, an amount representing approximately two thirds of the settlement check. The remaining one third of the $47,500 check would have been, under normal circumstances, the law firm’s contingency fee. In exchange for the payment, Valentin executed a “Subrogation Agreement,” giving the Lawyers’ Fund certain rights the Estate would have had against Schwartz, Gutstein and the banks who paid on the forged instrument. The Fund now seeks to hold Progressive and Bank Leumi liable for conversion of the full face amount of the check.
 

 On this appeal, we must determine whether the Lawyers’ Fund can recover the $47,500 face amount of the check, or is limited to the $31,750 it paid the Estate. We conclude that, pursuant to Uniform Commercial Code § 3-419 (1) (c) and § 3-419 (2) and in accordance with the agreement between the Fund and Valentin, the Fund can recover the full amount. We also conclude that the Lawyers’ Fund is entitled to interest from the date of the conversion, but is not entitled to a collection fee under State Finance Law § 18.
 

 I
 

 Nine days after executing the agreement with the Estate, the Lawyers’ Fund brought this action for conversion against all parties involved in paying on the forged indorsement: Bank Leumi Trust Company, the depository bank, Progressive Insurance Company, the drawer/drawee, and First National Bank of Ashland, the bank the check was made “payable through”
 
 (see,
 
 UCC 3-120). The Fund sought $47,500 plus interest from the date of conversion as well as a 22% collection fee under State Finance Law § 18.
 

 In response to Bank Leumi’s motion to change venue to New York County, the Fund opposed the motion and cross-moved for summary judgment on grounds that Progressive and Bank Leumi were liable for paying on the forged indorsement under UCC 3-419 (2). Thereafter, Progressive cross-moved for an order directing Bank Leumi to indemnify it, and First National Bank of Ashland cross-moved for an order dismissing the complaint against it for failure to state a claim. Supreme Court dismissed First National Bank of Ashland from the case and granted Progressive’s cross motion, ordering Bank Leumi to indemnify Progressive, but otherwise denied the motions. The Fund then appealed from so much of the order that denied its
 
 *403
 
 cross motion for summary judgment. The decisions that dismissed First National Bank of Ashland and that ordered Bank Leumi to indemnify Progressive were not appealed and thus are not at issue here.
 

 The Appellate Division modified, holding that the Fund was entitled to summary judgment against Progressive, as drawee, under UCC 3-419 (2). The Court held, however, that “plaintiffs recovery as a subrogee is limited to the $31,750 it paid Valentin” as administrator of the Estate (256 AD2d 836, citing
 
 Smirlock Realty Corp. v Title Guar. Co.,
 
 97 AD2d 208, 236,
 
 mod on other grounds
 
 63 NY2d 955). This Court granted plaintiff leave to appeal, and we now modify to allow plaintiff to recover the face amount of the instrument.
 

 II
 

 Ordered to indemnify Progressive, Bank Leumi alone defends this appeal, and argues that the Fund may recover only $31,750 because a subrogee’s claim is limited to the amount it paid the subrogor. As a general statement of the law of subrogation, Bank Leumi is correct (see,
 
 Winkelmann v Excelsior Ins. Co.,
 
 85 NY2d 577). However, this is not a case dealing with equitable subrogation. Instead, it involves a specific contract entered into pursuant to Judiciary Law § 468-b.
 

 Judiciary Law § 468-b provides for statutory subrogation rights “to the extent of [any] award” (Judiciary Law § 468-b [9]). These subrogation rights that accrue automatically, however, come
 
 in addition
 
 to a grant of authority to the Fund to “enter into such agreements as the board of trustees shall require, including assignments, subrogation agreements and promises to cooperate with the board of trustees in making claims against the attorney whose dishonest conduct resulted in the claim” (Judiciary Law § 468-b [4]). As we held in interpreting almost identical language in section 468-b’s predecessor statute, State Finance Law § 97-t (6), “[t]his grant of authority embraces a broad power to devise terms and structure reimbursement agreements”
 
 (Clients’ Sec. Fund v Grandeau,
 
 72 NY2d 62, 68 [Lawyers’ Fund for Client Protection, formerly known as Clients’ Security Fund]). The subrogation rights imposed automatically by Judiciary Law § 468-b (9) do nothing to limit the “broad power” of the Fund to further contract with those it seeks to reimburse.
 

 The Fund has taken that contract route here and in effect has become an assignee of the Estate for the limited purpose of
 
 *404
 
 recovering on the instrument. Although the agreement between the Estate and the Fund only uses the term “subrogation,” interpreting the document as a whole, it is clear that the agreement gave the Lawyers’ Fund the right to pursue the face amount of the converted check
 
 (Williams Press v State of New York,
 
 37 NY2d 434, 440 [entire agreement must be considered];
 
 Rentways, Inc. v O’Neill Milk & Cream Co.,
 
 308 NY 342, 347 [same];
 
 see, Kass v Kass,
 
 91 NY2d 554, 566-567 [entire document reveals parties’ object and purpose]).
 

 Use of the word “subrogate” in the context of the agreement was not meant to limit the Fund to the amount it paid the Estate. Two paragraphs in the agreement are key:
 

 “In consideration of such award, Claimant(s) subrogates to the Lawyers’ Fund for Client Protection,
 
 to the extent of the award,
 
 all rights, claims, judgments, and causes of action that Claimant(s) possesses or may possess against such former attorney * * * or any other person or entity who may be liable for Claimant’s(s’) loss.
 

 “Claimant(s)
 
 also subrogates
 
 to the Lawyers’ Fund for Client Protection
 
 all claims, demands and causes of action
 
 which Claimant(s) possesses by reason of the forgery, conversion and misappropriation of a
 
 $47,500 negotiable instrument
 
 numbered 402332963” (emphasis added).
 

 Bank Leumi focuses exclusively on the first of these paragraphs in arguing that the Lawyers’ Fund can seek only the amount of the award it paid the Estate. However, the agreement must be read in its entirety, and the second paragraph goes much further. It uses the word “also,” indicating that what follows is a separate, additional provision, not merely a reiteration of what came before. Moreover, the language is not limited “to the extent of the award,” but instead encompasses “all claims” with regard to the “$47,500 negotiable instrument.” In using the face amount of the check rather than the amount of the award, the conclusion naturally follows that this agreement was not intended to limit recovery to the amount of the award. In the end, Bank Leumi’s interpretation would render the second paragraph superfluous, a view unsupportable under standard principles of contract interpretation.
 

 Smirlock Realty Corp. v Title Guar. Co.
 
 (97 AD2d 208,
 
 mod
 
 63 NY2d 955,
 
 supra)
 
 is distinguishable. In that case the Appellate Division held that “defendant’s right of subrogation should
 
 *405
 
 be limited to the amount it expended”
 
 (id,.,
 
 at 236). But it went on to explain that “[t]he subrogation clause itself contains such a limitation”
 
 (id.).
 
 This Court’s decision did not touch on this issue, and we were not presented with a situation like the current case where the only reasonable interpretation of the particular language used in the agreement is that the parties did not restrict the Fund’s ability to recover on the check to the extent of the award
 
 (see, Travelers’ Ins. Co. v Brass Goods Mfg. Co.,
 
 239 NY 273, 276).
 

 Moreover, the Judiciary Law explicitly contemplates recovery by the Fund above the amount of its award: “In the event of a recovery by the fund, a claimant shall be entitled to any money recovered in excess of the fund’s award of reimbursement to the claimant” (Judiciary Law § 468-b [9]). As plaintiffs counsel explained, and fully consistent with the purpose of the Fund to aid defrauded clients, this statute requires that any recovery under the agreement attributable to the converted amount be paid to the Estate.
 

 ¡¡I
 

 Even if the agreement and Judiciary Law § 468-b allowed for assignment of Estate-held rights, Bank Leumi argues that recovery is limited to the Estate’s two-thirds interest in the joint-payee check. This argument raises a question explicitly left open in
 
 Mouradian v Astoria Fed. Sav. & Loan
 
 (91 NY2d 124, 131, n 4), whether a co-payee can recover the full face value of a converted check under UCC 3-419 (2).
 

 In
 
 Mouradian,
 
 we held that plaintiff co-payee could recover the face amount of the instrument against the drawee under, section 3-419 (2) where there had been no showing that plaintiff benefitted from the full amount converted. There, plaintiffs husband had forged plaintiffs indorsement on a fire insurance check made payable to both of them, and then he allegedly used the proceeds to repair the fire damaged house. Because it was uncontroverted that “plaintiff neither received the funds nor had control over or input into the use to which the funds were applied,” there could be no setoff in an action against the drawee
 
 (Mouradian v Astoria Fed. Sav. & Loan, supra,
 
 91 NY2d, at 130). Similarly, here, the Estate co-payee received no proceeds from the converted check. It has only received an award from the Fund equivalent to what its share would have been if the check had not been converted. We are persuaded that the reasoning in
 
 Mouradian
 
 applies with equal force to this case.
 

 
 *406
 
 UCC 3-419 (1) (c) provides that an instrument is converted when it is paid on a forged indorsement. Section 3-419 (2) states that “the measure of the drawee’s liability is the face amount of the instrument” but differentiates between drawees and all others, for whom “the measure of liability is
 
 presumed
 
 to be the face amount of the instrument” (emphasis added). As we noted in
 
 Mouradian,
 
 article 3 of the Uniform Commercial Code was revised with a new section, 3-420, which would have replaced section 3-419. However, New York has still not adopted this new provision, and the Official Comment to section 3-419 (2) provides that “ [i] n the case of the drawee * * * the presumption [rebuttable for all others] is replaced by a rule of absolute liability” (UCC 3-419, Official Comment 4, reprinted in McKinney’s Cons Laws of NY, Book 621/2, at 314).
 

 As we also held in
 
 Mouradian,
 
 “the rule of absolute liability will not preclude a setoff where the payee has received all or part of the proceeds of a converted instrument.”
 
 (Mouradian v Astoria Fed. Sav. & Loan, supra,
 
 91 NY2d, at 129;
 
 see, e.g., Gotham-Vladimir Adv. v First Natl. City Bank,
 
 27 AD2d 190.) The reason for allowing such a setoff is two-fold. First, a defendant cannot be said to have engaged in conversion — an unauthorized exercise of the rights of ownership — where the plaintiff has control of the funds and is in fact exercising ownership rights
 
 (see, Mouradian v Astoria Fed. Sav. & Loan, supra,
 
 at 129;
 
 see also,
 
 UCC 1-106). Second, allowing such a setoff prevents unjust enrichment
 
 (Tonnelli v Chase Manhattan Bank,
 
 41 NY2d 667, 670-671;
 
 Sweeney v National City Bank,
 
 263 App Div 418, 423 [concurring opn],
 
 affd
 
 290 NY 624).
 

 Here, however, there is no claim that the Estate ever received the proceeds of the check. To the contrary, it is undisputed that the law firm appropriated the funds, and the Fund, as subrogee/assignee, cannot be in a better or worse position than its subrogor/assignor, the Estate. What Bank Leumi argues is that because the law firm received its intended one-third share of the settlement check, the Fund cannot seek to recoup more than two thirds of the face amount. This position runs afoul of our holding in
 
 Mouradian,
 
 which prohibits inquiry into whether a payee suing for conversion received what could be considered a benefit from a co-payee’s forgery. The Estate here received no benefit from the proceeds of the converted check. As
 
 Mouradian
 
 makes clear, the critical inquiry is whether a plaintiff actually received all or part of the proceeds of the check, not whether a plaintiff received a possible benefit from the forger’s misdeeds
 
 (see also, Kenerson v
 
 
 *407
 

 FDIC,
 
 44 F3d 19, 35 [1st Cir]). Bank Leumi’s argument that because the Estate received the benefit of the law firm’s legal services, neither it nor its assignees can recover what would have been the law firm’s fee must be rejected in light of the plain language of UCC 3-419 (2) that fixes the remedy for conversion against a drawee at the face amount.
 

 Bank Leumi also advances a related argument under UCC 3-404. That statute provides what is commonly called the “ratification defense”:
 

 “Any unauthorized signature [defined to include forgery] is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it” (UCC 3-404 [1]).
 

 The essence of Bank Leumi’s contention here is that the Estate, by agreeing to receive two thirds of the check from the Fund, ratified the forgery to the extent that the law firm was paid its one-third fee. We need not decide if partial ratification is possible under section 3-404 since the Estate’s words and deeds do not establish a ratification. In agreeing to accept two thirds, the Estate did not approve the forgery. It merely agreed to take an award that was immediately available and allow the Fund to pursue further remedies. This course of action did nothing to ratify the forgery. Indeed, Bank Leumi can point to no act or express statement by the Estate or the Fund which treats the forged indorsement as valid, much less any New York or other persuasive authority for its attempt to use UCC 3-404 in this way.
 

 We have considered all other proffered defenses and found them to be meritless. As a result, Progressive as drawee, is liable for the face amount of the converted check under UCC 3-419 (2) and Bank Leumi, as held below and uncontested here, must indemnify Progressive.
 

 IV
 

 Two issues remain. First, does interest run from the date of defalcation or the date of subrogation and assignment? This Court has long held that an award of interest is often appropriate from the time at which a party was deprived of the use of money since without the addition of interest, the aggrieved party is not made whole
 
 (Prager v New Jersey Fid. & Plate Glass Ins. Co.,
 
 245 NY 1, 5-6;
 
 see, Preston Co. v Funkhouser,
 
 261 NY 140, 144-145). Moreover, contrary to Bank Leumi’s assertion, the subrogation and assignment did not affect the date
 
 *408
 
 from which interest accrues. After the agreement was executed, the Fund’s claim for damages was co-extensive with that which the Estate possessed. Interest thus properly runs from the date of conversion or defalcation.
 

 Finally, the Fund claims that it is entitled to a 22% collection fee under State Finance Law § 18, which, as relevant here, applies when the State seeks to recover “any liquidated sum due and owing any state agency * * * regardless of whether there is an outstanding judgment for that sum” (State Finance Law § 18 [1] [b]; [5]). Under the circumstances presented here, the sum owed the State, in this case the Lawyers’ Fund, cannot be considered liquidated. As a result, no award of a collection fee is appropriate.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to the Lawyers’ Fund, to the extent that plaintiff is granted summary judgment as against defendant Progressive Insurance Company for the total amount converted, $47,500, with interest from May 25, 1993, and the matter is remitted to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Wesley and Rosenblatt concur.
 

 Order modified, with costs to appellant, by remitting to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.