**CALGON CARBON CORPORATION,**
Plaintiff,

v.

**WDF, INC. and Seaboard Surety
Company, Defendants.**

No. 08 Civ. 4407(CM).

United States District Court,
S.D. New York.

March 25, 2010.

Michael R. Gordon, Thelen, Reid & Priest, L.L.P., Rebecca Louise Misner, K & L Gates LLP, New York, NY, Joseph Leonard Luciana, K & L Gates, LLP, Megan Elizabeth Smith Miller, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, Pittsburgh, PA, for Plaintiff.

William J. Turkish, Jericho, NY, for Defendants.

## DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge:

Plaintiff Calgon Carbon Corporation ("Plaintiff") filed this action against defendants WDF, Inc. ("WDF") and Seaboard Surety Company ("Seaboard") (collectively, "Defendants"). The complaint alleges breach of a subcontract because WDF failed to pay the balance due for work performed and materials delivered pursuant to a purchase order between Plaintiff and Connor Management, Inc. ("Connor"), WDF's predecessor-in-interest under an environmental clean-up contract with the New York City Department of Environmental Protection ("DEP").

WDF asserted a counterclaim against Calgon. It appears to be undisputed that defendant qualified to receive a "substantial completion" bonus from DEP back in 1993 or 1994; it is also undisputed that the bonus was not actually paid until 2007. WDF asserts that the bonus was not paid until recently because of Calgon's purported delay in remediating a problem with certain fans that were supplied pursuant to its subcontract. What WDF seeks from Calgon is money to compensate it for the lost use of the bonus money during for the period of time when the bonus remained unpaid—a period of some fourteen years—measured at the statutory rate of interest. WDF has moved for summary judgment on this counterclaim.

Numerous disputed issues of material fact preclude the Court from granting WDF summary judgment on the issue of whether Calgon breached any of its contractual obligations to WDF. However, the Court has substantial doubts about whether the claim here asserted is viable at all. It seems to me that any claim against Calgon for breach of contract is untimely—an issue the parties have not bothered to address. Also, it is difficult to understand why WDF has any claim *against Calgon* for interest on amounts *owed but not paid by DEP*. If the agency did not pay the bonus when payment was due under the contract, then it seems that *DEP* should have paid interest at the statutory rate.

Still, WDF has asserted a claim for breach of contract against Calgon, and Calgon correctly points out that numerous factual issues exist relating to that claim, without suggesting that summary judgment dismissing the counterclaim ought be awarded in its favor. So the court will simply deny WDF's motion.

### BACKGROUND

The following facts are taken from Defendants' Local Rule 56.1 Statement of

Material Facts ("Defs.' 56.1"), Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Material Facts ("Pl's Resp.") and Defendants' Reply to Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Material Facts ("Defs.' Rply"). There are numerous disputed issues of fact that are material to the issue before this Court. The Court will accept the view of the facts most favorable to Plaintiff.

### The Parties

Plaintiff is a Delaware corporation with a principal place of business located at 500 Calgon Carbon Drive, Pittsburgh, PA 15205. Plaintiff was a subcontractor in the DEP public works project no. 51–G ("51–G Project"). Plaintiff entered into a purchase order dated May 3, 1990 (the "Purchase Order") with Connor. (Pl.'s Resp. ¶ 27; Defs.' Rply ¶ 47.)

Defendant WDF, formerly Wachtel, Duklauer & Fein, Inc., is a New York corporation with a principal place of business located at 30 North MacQuesten Parkway, Mt. Vernon, N.Y. 10550. WDF was the prime contractor in the 51–G Project.

Defendant Seaboard is a New York corporation with business locations at 90 William Street, New York, N.Y. 10038 and One Tower Square, Hartford, CT 06183. Seaboard issued bonds to WDF to guarantee WDF's performance and payment obligations relating to the 51–G project.

### The DEP 51–G contract

Pursuant to a federal consent decree, the New York State Environmental Protection Agency ("EPA") mandated that DEP stop dumping sludge in the ocean and build dewatering facilities for all water pollution control facilities in New York City. (Defs.' 56. ¶ 2; Pl.'s Resp. ¶ 2.)

On or about May 9, 1990, DEP awarded the 51–G Contract to Wachtel, Duklauer and Fein, Inc. The contract required WDF to furnish and install all the process equipment for all dewatering facilities in New York City. (Defs.' 56.1 ¶ 4; Pl.'s Resp. ¶ 4.) The original contract price was $47.8 million, an amount that increased to over $50 million as a result of change orders. (Pl.'s Resp. ¶ 44; Defs.' Rply ¶ 44.) WDF earned a 20% profit on the contract—over $1 million. (Pl.'s Resp. ¶ 71; Defs.' Rply ¶ 71.)

WDF subcontracted with an enterprise called Connor Management, Inc. to provide and install certain odor control equipment. Connor then subcontracted with Plaintiff (under the Purchase Order[1]) to, inter alia, furnish and install twelve scrubber exhaust fans at several locations in the city. (Defs.' 56.1 ¶¶ 6–7; Pl.'s Resp. ¶ 6–7, 45.) The subcontract price was $6.1 million. (Defs.' Ex. C.) WDF admits that it is the successor in interest to Conner for purposes of the 51–G Contract. (Defs.' Rply ¶ 47.)

Plaintiff in turn subcontracted with Hartzell Fan, Inc. ("Hartzell") for the purchase and sale of twelve scrubber exhaust fans that were to be installed pursuant to the specifications of the 51–G Contract. (Defs.' 56.1 ¶ 8; Pl.'s Resp. ¶ 8.) The cost of the fans was $312,900, based on a unit price of $26,075 per fan. (Pl.'s Resp. ¶ 46; Defs.' Ex. N at 2.)

In 1991 or 1992, Calgon installed the exhaust fans that Hartzell supplied. (Defs.' 56.1 ¶ 10; Pl.'s Resp. ¶ 10.)

---

1. The Purchase Order was entered on May 3, 1990, which pre-dates the 51–G Contract. It appears the subcontractors were locking in prices before the DEP awarded the 51–G Contract, because the Purchase Order states that it is subject to Connor's being awarded the contract by DEP. (Defs.' Ex. C.)

**Substantial completion and early completion bonus**

The 51–G Contract contains a provision for the payment of an early completion bonus if WDF achieves substantial completion prior to a certain date. (Defs.' 56.1 ¶ 12; Pl.'s Resp. ¶ 12.) Substantial completion is defined in the 51–G Contract as achievement of *beneficial use* of all of the work that was assigned under the 51–G Contract. (Defs.' 56.1 ¶ 11; Pl.'s Resp. ¶ 11.) An internal DEP field memo dated December 22, 1993, cites the relevant contract language from Specification Section D–0.58, Bonus/Liquidated Damages, Paragraph C1:

> In the event the Commissioner, in the exercise of his sole and absolute discretion, finds that the work of all Contractors at the site would have received a determination date of completion ... prior to the date of completion *AND* that receipt of such date of completion was precluded solely due to the issuance of certain change order work, he, in his sole judgment, may determine that the Contractor is entitled to a bonus ...; provided, however, the Contractor shall not be entitled to a bonus if the Commissioner, in the exercise of his sole and absolute discretion, determines that the required work has not been completed in a timely fashion.

(Defs.' Ex. E at 2.)

By memo dated January 25, 1993, DEP informed WDF that it had performed a substantial completion inspection on September 30, 1992, and that "[t]he work was found to be satisfactorily complete and is accepted except for the attached list of unaccepted work." (Defs.' Ex. F at 1.) Attached thereto was the Article 43 Punchlist. (Pl.'s Ex. B.) There were 113 different items of work on the punchlist, in the total amount of $1,165,310. DEP withheld payment from WDF in the amount of double the value of the punchlist under Article 43. (*Id.*; Pl.'s Resp. ¶ 48.) None of those 113 items has anything to do with Calgon's fans. (Pl.'s Resp. ¶ 56; Defs.' Rply ¶ 56.) The January 25, 1993 memo does not say anything about WDF's being entitled to a substantial completion bonus.

On or about December 22, 1993, Stone & Webster Engineering Corporation and Hazen & Sawyer Engineers, P.C., submitted a Field Memorandum to DEP. This Field Memo contained a recommendation that WDF receive a bonus payment of $705,000, but states: "No bonus payment will be incorporated into the contractor's partial payment invoice until DEP management reviews and approves this report, as acknowledged by signature hereinafter." (Defs.' Ex. E at 3.) The last page of the memo contains the signatures of six DEP individuals next to the word "Approved"; the latest signature is dated January 7, 1994. (*Id.* at 4.)

WDF, predictably, contends that its right to the bonus payment ripened on January 7, 1994, when the Field Memo was approved by DEP management. Calgon asserts that the bonus recommendation was not approved by DEP at that time, and that DEP did not finally agree to pay the bonus until July or August of 2004—the date when WDF's representative John Stacom said DEP "agreed to pay [WDF] that bonus" and "not rescind it." (Pl.'s Ex. C (John Stacom Deposition ("Stacom Dep.") at 46).) And in fact, according to Stacom, it was around this time that DEP agreed to pay the bonus in exchange for WDF's waiver of any claims against DEP for delay. (Stacom Dep. at 48–49; *see also* Stacom Dep. Ex. 6.) As additional evidence that this was the date when defendant's right to the substantial completion bonus ripened, plaintiff points out that WDF, by its own admission, did not include any line item for the bonus in

any requisition until it submitted its Final Requisition to DEP in September 2004. (Defs.' 56.1 ¶ 34; Pl.'s Resp. ¶¶ 34, 74–75.)

Work on the punchlist was not completed by January 1994, or for years thereafter. WDF admitted "it took years . . . to get the punchlist done. . . ." (Pl.'s Resp. ¶¶ 49–51.) The record does not contain any evidence of when the punchlist work was finally complete. However, DEP had the beneficial use of the facilities covered by the contract while the punchlist work was being carried out. DEP admits that it had beneficial use of the facilities from and after September 30, 1992. (*Id.* ¶¶ 61–62; Defs.' Rply ¶¶ 61–62.) In any event, as noted above, nothing relating to Calgon's fans was on the punchlist.

DEP issued a Certificate of Completion and Acceptance for Final Completion Payment to WDF on November 18, 2005. The certificate identifies the date of substantial completion as September 30, 1992. The Certificate also identifies a "Date for Release of Guarantee Monies" as September 30, 1993, but the parties have not explained what "guarantee monies" are. (Defs.' 56.1 ¶ 36; Pl.'s Resp. ¶ 36.) In April 2007, after three years of negotiation and compromise over WDF''s Final Requisition, DEP issued final payment to WDF; the payment included the $705,000 early completion bonus. (Defs.' 56.1. ¶¶ 42–43; Pl.'s Resp. ¶¶ 42–43.)

### Problems with the Exhaust Fans

There was a problem with the airflow provided by the Calgon/Hartzell fans. This issue surfaced in February 1993. It was investigated for years; in 2000, Calgon sued Hartzell over the low airflow problem. (Defs.' 56.1 ¶¶ 26–27; Pl.'s Resp. ¶¶ 26–27, 57–58.) The lawsuit was eventually settled in September 2003, when Hartzell agreed to supply and install new fans. (Defs.' 56.1 ¶ 31; Pl.'s Resp. ¶ 31.) That

work was completed by February 2004. (Pl.'s Resp. ¶ 60; Defs.' Rply ¶ 60.)

During this entire ten-year period, DEP had the beneficial use of all its facilities; it never had to shut them down due to the low airflow problem. (Pl.'s Resp. ¶¶ 57–63; Defs.' Rply ¶¶ 61–63.) DEP withheld $180,000 from WDF while the fan problems were resolved. (Pl.'s Resp. ¶ 65.) However, DEP did not backcharge WDF for any extra expenses due to the airflow problem. (*Id.* ¶ 64.)

DEP representative Nick Politis testified that substantial completion "ha[d] nothing to do with the fans." (*Id.* ¶ 79.) He also testified that "until the [fan] problem was resolved, WDF couldn't have gotten paid on the early completion bonus that was awarded to them in 1993." (Defs.' Rply ¶ 79.)

### Calgon's Claim for Non–Payment

WDF made no payment to Calgon after May 30, 1993. Calgon asserts that WDF still owes it 552,480 for base contract work and approved change orders, together with additional sums for disputed change orders. That claim is the subject of this lawsuit.

### Procedural History

On May 9, 2008, Plaintiff filed this action against Defendants for breach of contract, alleging a balance due for work performed and materials delivered pursuant to the Purchase Order.

Defendants filed a First Amended Answer on August 25, 2008. It included a counterclaim for breach of contract for failure to supply in a timely manner fans that were compliant with the contract, and then the failure to remedy the problem for some ten years. Defendant alleges that Plaintiff's failure to timely remedy the fan problems caused DEP to delay in paying WDF its substantial completion bonus until April 2007. Defendant seeks damages

in the amount of the use of this money, as measured by the statutory interest formula set forth in CPLR 5001.

## DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the court to determine. *Balderman v. U.S. Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Sufficient evidence must exist upon which a reasonable jury could return a verdict for the non-movant.

Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. Applicable Legal Standard

In this diversity action, New York State's substantive law applies. *See DeWeerth v. Baldinger,* 38 F.3d 1266, 1272 (2d Cir.1994); *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.,* 232 F.Supp.2d 289, 291–92 (S.D.N.Y.2002). Both parties have relied on New York law in their briefs, and the parties to the Purchase Order agree that it "shall take effect and be construed in accordance with the Laws of the State of New York." (Defs.' Ex. C.)

The nature of the counterclaim is breach of contract—that is, WDF asserts that Calgon breached its subcontract, first by failing to supply contract-compliant fans in the first place, and then by failing to remediate the problem for a decade and more. WDF alleges that Calgon's breach occasioned the failure of DEP to pay the substantial completion bonus until 2007—that is, DEP's delay in making payment was a consequence of Calgon's breach. The purported measure of these consequential damages is the interest it could have earned on the bonus payment for the period during which it was withheld—measured at the statutory interest rate.

To establish a prima facie case for breach of contract under New York law, a plaintiff must prove the following elements: (i) the existence of a contract; (ii) performance of the contract by one party; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See, e.g., First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162 (2d Cir.1998).

In this case, the only contract that Calgon could have breached is the Purchase Order. There are disputed issues of material fact concerning whether Calgon breached the Purchase Order at all; whether its breach was material; and whether any damages, let alone the damages claimed by plaintiff, flowed directly and proximately from Calgon's breach. In addition, Calgon has a claim for unpaid amounts under the Purchase Order that would have to be offset against any recovery that WDF might be entitled to, were it to prevail on the breach of contract claim. For all these reasons, WDF is not entitled to summary judgment as a matter of fact.

WDF is also not entitled to summary judgment because it has not introduced any evidence to support its contention that it was entitled to receive the bonus on or about the substantial completion date. The bonus may have been earned in 1993, or at the latest January 1994, but nothing in the record before me establishes that the DEP was required, under the terms of the contract, to pay the bonus immediately upon a finding of substantial completion. For all the Court knows, DEP was only required to pay the bonus as part of a final accounting of the project. If the 51–G contract is silent about the date when payment of the bonus was due (and it appears that the contract does not fix the moment when the bonus must be paid), it will be necessary for the parties to introduce evidence tending to show the practice in the industry with respect to the payment of completion bonuses. WDF does not support its motion with any such evidence.

If bonuses are not customarily paid until projects are finally complete—even if the contractor's right to the bonus ripened earlier—the trier of fact would need to establish the date on which the project was in fact complete, thereby ripening the defendant's entitlement to payment. This

will require taking evidence about when WDF finally finished with the 113 punchlist items. Calgon could not possibly be responsible for delaying the payment of the substantial completion bonus as long as punchlist items remained open, even if it was in breach of the Purchase Order. As Calgon points out, the record on this motion does not include any information about when the punchlist items were complete—and it is undisputed that the fan problems were not even on the punchlist! For all the Court knows, the fan problems were finally resolved before the last of the 113 punchlist items was complete. All of this remains to be explored.

Second, although no party has raised the issue of limitations, it appears to the court that if Calgon breached the contract at all, it was by failing to provide fans that worked properly. But this breach was committed back in 1991 or 1992. It is undisputed that the parties were aware of an airflow problem as early as February 1993. The six year limitations period for bringing a breach of contract claim in connection with the provision of defective fans probably began running in 1992, and certainly no later than the discovery of the problem in February 1993. If I am right about this, any claim for such a breach has been time-barred for a decade and more.

If, on the other hand, the asserted breach is Calgon's failure to remediate the problem in a timely manner—and if it is possible to breach the Purchase Order in that manner (an issue no party bothers to discuss)—then the claim for breach accrued no later than the time when Calgon should have taken care of the problem but failed to do so. The parties have offered no evidence about when that might have been. This may be why Calgon has not moved for summary judgment on statute of limitations grounds—or why it asserts in its papers that it could have breached

the Purchase Order no earlier than 2004 (although it fails to point to any provision of the Purchase Order that would support such a contention).

■ One thing is clear: the breach of contract counterclaim against Calgon most certainly did *not* accrue when the bonus was finally paid in 2007. Calgon did not have any obligation to pay WDF a substantial completion bonus; its only obligations were spelled out in the Purchase Order, and only a breach of one of those obligations can underlie a claim against Calgon.

■ This brings me to a third point. Assuming *arguendo* that payment of the bonus was contractually required at or about the time of substantial completion in 1994, the party that should have made the payment is DEP—not Calgon—and any damages that flowed from DEP's failure to pay would appear to be the legal responsibility of DEP. In fact, if DEP was legally obligated to make the payment years ago, it is DEP that should be liable for WDF's loss of the use of the money pursuant to CPLR 5001—not Calgon.

■ In New York, interest awards are "purely a creation of statute." *Mfr's & Traders Trust Co. v. Reliance Ins. Co.*, 8 N.Y.3d 583, 588, 838 N.Y.S.2d 806, 870 N.E.2d 124 (2007) (internal quotation marks omitted). Therefore, any award of interest by the courts must be authorized by statute. *Id.* New York's general interest statute provides that

> [i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall

be computed shall be in the court's discretion.

N.Y. C.P.L.R. 5001(a) (McKinney 2008). Civil Practice Law and Rule 5001 ("CPLR 5001") specifically addresses pre-judgment interest, which is recoverable as a matter of right for contract damages. *See Graham v. James,* 144 F.3d 229, 239 (2d Cir. 1998); *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.,* 232 F.Supp.2d 289, 292 (S.D.N.Y.2002). In a case involving breach of contract, the interest is measured from the date of the breach or the "earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." CPLR 5001(b); *see also Love v. State,* 78 N.Y.2d 540, 544, 577 N.Y.S.2d 359, 583 N.E.2d 1296 (1991); *Van Nostrand v. Froehlich,* 44 A.D.3d 54, 56, 844 N.Y.S.2d 293 (N.Y.App. Div.2d Dep't 2007). An award of interest is "often appropriate from the time at which a party was deprived of the use of money." *Lawyers' Fund for Client Prot. v. Bank Leumi Trust Co.,* 94 N.Y.2d 398, 407, 706 N.Y.S.2d 66, 727 N.E.2d 563 (2000).

■ But the "purpose of awarding interest is to make the aggrieved party whole." *Spodek v. Park Prop. Dev. Assocs.,* 96 N.Y.2d 577, 581, 733 N.Y.S.2d 674, 759 N.E.2d 760 (2001) (*citing Van Rensselaer v. Jewett,* 2 N.Y. 135, 140–141 (1849), and *Prager v. N.J. Fid. & Plate Glass Ins. Co.,* 245 N.Y. 1, 6, 156 N.E. 76 (1927)). Interest is designed, not to be a penalty, but rather *"to require a person who owes money to pay compensation for the advantage received from the use of that money over a period of time." Mfr's & Traders Trust Co.,* 8 N.Y.3d at 589, 838 N.Y.S.2d 806, 870 N.E.2d 124 (emphasis added); *see also Love,* 78 N.Y.2d at 544–45, 577 N.Y.S.2d 359, 583 N.E.2d 1296; *Stanford Square,* 232 F.Supp.2d at 293. The party

against whom a judgment is awarded is presumed to have used the money to its benefit, and consequently, to have realized some profit, tangible or otherwise. *Spodek*, 96 N.Y.2d at 581–82, 733 N.Y.S.2d 674, 759 N.E.2d 760. Otherwise, making Party B pay interest on Party A's debt would be in the nature of a penalty.

Assuming *arguendo* that DEP withheld payment that it was legally required to make in or about September 1993 (which the parties agree is the "substantial completion" date), then DEP, not Calgon, has had the use of the bonus money for the thirteen or fourteen years when the bonus remained unpaid. Calgon did not hold the bonus money during the fourteen-year interval, so it neither retained nor enjoyed the use of the bonus money. DEP did. Nor did Calgon realize any benefit, financial or otherwise, from the delay in paying the substantial completion bonus, so as to make it equitable to impose DEP's interest obligation on Calgon. On the contrary, Calgon incurred substantial additional costs while seeking to remedy the fan problems, and it claims to have lost money because WDF has refused to pay the balance due under the Purchase Order.

Also, no sum of money has been awarded *against Calgon* upon which Defendants can recover interest—and WDF does not seek the award of any such sum, because DEP has paid it the full amount of the bonus.

It thus appears that any interest that may be owed on the sum that was wrongfully withheld by DEP—assuming that DEP's refusal to pay was wrongful, and that a timely claim for all or some portion of that interest could still be asserted— would be the responsibility of DEP. Of course, WDF has waived all claims against DEP arising out of any late payments, so it has no recourse against the agency. (Pl.'s Resp. ¶¶ 66–67; Stacom Dep. Ex. 6.)

But that does not mean it can obtain from Calgon amounts it has absolved DEP from any responsibility to pay.

A recent case supporting the conclusion that no claim lies against Calgon for interest on the substantial completion bonus is *Mfr's & Traders Trust Co. v. Reliance Ins. Co.*, 8 N.Y.3d 583, 589, 838 N.Y.S.2d 806, 870 N.E.2d 124 (2007). There, the Court of Appeals of New York overturned an award of "statutory interest" pursuant to CPLR 5001 in circumstances remarkably like those at bar. In that case, disputes arose between a general contractor and its subs over entitlement to an escrow fund. The bank that was holding the money commenced an interpleader action. *Id.* at 587, 838 N.Y.S.2d 806, 870 N.E.2d 124. The court awarded the disputed funds to the general contractor. The general contractor then sought an order making the subcontractors liable for interest on the sum awarded for the period while it was in interpleader. The lower courts awarded interest against the subcontractors. *Id.* at 587–88, 838 N.Y.S.2d 806, 870 N.E.2d 124.

The Court of Appeals reversed the interest award for two reasons. First, no sum had been "awarded against" the subcontractors for any breach of contract. Second, there was no equitable basis to award interest against them because the disputed funds were held either by the bank or by the clerk of the court—not by the subcontractor—during the period for which interest was sought. Making the subcontractors liable for interest on funds that were in interpleader "would be to penalize them for a delay that brought them no benefit." *Id.* at 589, 838 N.Y.S.2d 806, 870 N.E.2d 124.

That *Mfr's & Traders Trust Co.* was an interpleader action—an equitable action, one in which a court has *discretion*, not an obligation, to award interest—does not make the case inapplicable here. First, in

*Mfr's & Traders Trust Co.*, the general contractor had also asserted that it was entitled to interest from the subcontractors under CPLR 5001(a) because the subcontractor had breached the contract (the very claim asserted here by Calgon). The Court of Appeals concluded that the subcontractors were not so liable, because no sum had been awarded against them for any breach of contract; the statute by its terms authorizes interest "upon a sum awarded because of a breach of performance of a contract." CPLR 5001(a). Second, while an award of interest in equity is always discretionary under CPLR 5001, the Court Appeals' conclusion that discretion "d[id] not stretch as far as" to authorize an equitable award of interest absent an underlying award of a sum of money simply means that an award of bare "statutory interest" in a case like this one is authorized neither in law (by the express terms of the statute) or in equity. *Mfr's & Traders Trust Co.*, 8 N.Y.3d at 589, 838 N.Y.S.2d 806, 870 N.E.2d 124.

WDF cites four cases to support its claim for damages measured as statutory interest—cases in which interest was granted to a party wrongfully deprived of its property or the use of its funds. CPLR 5001 expressly authorizes an award of statutory interest for an act or omission that wrongfully deprives or interferes with someone's possession or enjoyment of property. CPLR 5001. But that presumes the plaintiff is asserting a cause of action for wrongful deprivation of property—not that plaintiff is asserting a claim for breach of contract. For example, a plaintiff who asserts a claim in conversion would be entitled to statutory interest for wrongful deprivation of the use of property. But WDF does not assert a claim for conversion and none lies on the facts of

this case, because Calgon has never possessed a dime of WDF's bonus money.[2]

Another type of claim in which interest can be awarded for wrongful deprivation of the use of property is a claim for wrongful attachment, which is discussed in cases like *Richman v. Richman*, 52 A.D.2d 393, 384 N.Y.S.2d 220 (N.Y.App. Div.3d Dep't 1976) and *Subin v. U.S. Fidelity & Guaranty Co.*, 12 A.D.2d 49, 208 N.Y.S.2d 278 (N.Y.App. Div. 1st Dep't 1960), both of which are cited by plaintiff. In both of those cases, the plaintiffs obtained an award of interest at the legal rate, to compensate them for the use of their wrongfully attached property. *See Subin*, 12 A.D.2d at 51–52, 208 N.Y.S.2d 278; *Richman*, 52 A.D.2d at 396, 384 N.Y.S.2d 220; *see also; Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.*, 524 F.Supp.2d 412, 424 (S.D.N.Y.2007). However, damages for wrongful attachment were awarded pursuant to Civil Practice Law and Rule Section 6212(e), not pursuant to CPLR 5001, the statute on which WDF purports to rely. N.Y. C.P.L.R. 6212 (McKinney 2008); *see Correspondent Servs. Corp.*, 524 F.Supp.2d at 424. Also, those statutory interest damages were awarded against the person who wrongfully attached the property (the party analogous to DEP in this case)—not against a third party whose actions allegedly caused the person to wrongfully attach the property (*a la* Calgon). *Subin*, 12 A.D.2d at 50, 52, 208 N.Y.S.2d 278; *Richman*, 52 A.D.2d at 394, 396, 384 N.Y.S.2d 220. WDF does not cite a single case in which Party A was held responsible for damages measured as the interest on a sum of money that was wrongfully withheld by Party B.

So it is clear that, as a matter of law, WDF's damages for breach of contract against Calgon cannot be measured as the

---

**2.** The three year statute of limitations on a conversion claim would have expired even

earlier than the six year limitations period for breach of contract.

amount of interest it would have earned on the substantial completion bonus had that bonus been paid a decade and a half ago. If Calgon breached its subcontract, and if such a claim is not time-barred, then WDF may be entitled to damages measured pursuant to traditional contract principles, and statutory interest would have to be awarded on *that* sum (not on the amount withheld by DEP) pursuant to CPLR 5011. But as noted above, there are numerous disputed issues of fact concerning whether and when Calgon breached its subcontract and when that breach occurred. Therefore, an award of summary judgment to anyone would be premature.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is denied. The Clerk of the Court is directed to remove the motion for summary judgment (Docket No. 35) from the Court's outstanding motion list.