Monserrate **LUNA**, Plaintiff,

v.

**AMERICAN AIRLINES and LSG Sky Chefs**, Defendants.

American Airlines and LSG Sky Chefs, Third–Party Plaintiffs,

v.

**Overhill Farms, Inc.**, Third–Party Defendant.

No. 04 Civ. 1803(MHD).

United States District Court, S.D. New York.

Jan. 6, 2011.

Satish K. Bhatia, Satish Kumar Bhatia, Bhatia & Associates, PC, New York, NY, for Plaintiff.

Kenneth Joseph Gormley, Shelowitz & Associates, PLLC, Kimberly Marie Jagodzinski, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY, for Defendants and Third–Party Plaintiff.

Robert Joseph Soffientini, Cohen, Kuhn & Associates, New York, NY, for Counter Claimant.

## MEMORANDUM & ORDER

MICHAEL H. DOLINGER, United States Magistrate Judge.

Plaintiff Monserrate Luna, a one-time passenger on an American Airlines flight, commenced this lawsuit to seek compensation for injuries that she allegedly suffered when she consumed a meal containing some foreign matter, variously identified as a piece of a lizard or insects. She sued both American Airlines, which had served her the meal, and the airline's caterer, LSG Sky Chefs, which had handled the receipt, storage and delivery to the plane of the passenger meals. Ultimately, we read her complaint as encompassing claims for both negligence and implied warranty. Both defendants in turn impleaded third-party defendant Overhill Farms, Inc., which had allegedly supplied the meals for Ms. Luna's flight. In their third-party complaint they asserted claims against Overhill Farms for contractual and common-law indemnification.

At the conclusion of a jury trial, we dismissed as a matter of law plaintiff's negligence claim against both American Airlines and Sky Chefs, and the jury then found that the meal was not unfit for human consumption, thus disposing of her claim of implied warranty. With the consent of the defendants and third-party defendant, the third-party indemnification claims of the defendants—now limited to the expenses (including attorney's fees) engendered by Ms. Luna's suit—were left for the court to determine.

We have received post-trial briefing by both defendants and the third-party defendant.[1] Defendants assert principally that they are entitled to common-law indemnification for the litigation expenses that they incurred, that American Airlines is entitled to contractual indemnification, and that even if the airline's litigation expenses have already been paid by Sky Chefs, that entity has become the "real party in interest," acquiring the airline's contractual rights under the indemnification agreement with Overhill. Overhill argues principally that it did not supply the meal in question and hence cannot be responsible for any form of indemnification, that under the indemnification theories as pled in the third-party complaint it has no responsibility for defendants' expenses, that neither defendant is entitled to common-law indemnification in view of the jury's verdict, that its indemnification agreement with the airline does not cover attorney's fees, and that the airline—the only party to the indemnification agreement—cannot recover if its expenses were already paid by Sky Chefs.

---

1. The initial briefing by defendants was actually received during the trial itself.

Having reviewed the trial record and the briefing of the parties, we now conclude (1) that the defendants' common-law claims for indemnification must be dismissed, (2) that judgment should enter in favor of American Airlines on its contractual-indemnification claim, (3) that the airline is entitled to indemnification of fees as well as other expenses, (4) that the equivalent claim of Sky Chefs (as articulated in defendants' post-trial briefing, though not in their third-party complaint) must be dismissed, (5) that Overhill is entitled to a setoff for any litigation expenses of the airline that have been paid by Sky Chefs, and (6) that the amount of American Airlines' recovery must be proven either by affidavit or at an evidentiary hearing, in accordance with a schedule that we establish below.

*The Claims As Pled*

Defendants asserted two third-party claims against Overhill. One was on behalf of American Airlines and, although not drafted with precision, plainly asserted at least a claim for contractual indemnification as well as contribution. As pled, it premised the airline's entitlement to recovery on the pre-condition that the trier of fact find that the meal supplied by Overhill was defective and had caused plaintiff to be injured. Thus it recited:

> That in the event that plaintiff Monserrate Luna sustained any injuries or damages as a result of allegedly ingesting the chicken entree while on board American Airlines flight 1639 on July 20, 2003, that said damages were caused solely by the negligence, carelessness and recklessness of third-party defendant Overhill Farms, Inc. in their performance of their duties and responsibil-

ities under its contract with American Airlines, Inc.

> That as a result of third-party defendant Overhill Farms, Inc.'s negligence, carelessness and recklessness, defendant/third-party plaintiff American Airlines has been damaged and continues to accrue damages . . . .

> That third-party defendant Overhill Farms, Inc. is contractually obligated to indemnify, defend and hold harmless defendant/third-party plaintiff American Airlines consistent with the language of its contract with American Airlines for damages alleged to have been sustained by plaintiff Monserrate Luna.

> That third-party defendant Overhill Farms, Inc. is required to indemnify, defend and hold harmless defendant/third-party plaintiff American Airlines consistent with the language of its contract with American Airlines for any damages alleged to have been sustained by the plaintiff Monserrate Luna.

> By reason of the foregoing, in the event that any judgment or verdict is recovered against the defendant/third-party plaintiff American Airlines, the defendant/third-party plaintiff is entitled to contribution and indemnification from, over and against third-party defendant Overhill Farms, Inc.

(Third–Party Compl. at ¶¶ 10–14).

The second claim, also inartfully pled, sought, on behalf of Sky Chefs, both common-law contribution and indemnification.[2] As worded, it too was explicitly premised on a finding by the trier of fact that the meal in question was defective and had caused injury to plaintiff. It recited:

> That in the event that the plaintiff Monserrate Luna sustained any injuries or

**2.** At one point the pleading refers to "principles of contractual common law indemnification and contribution" (Third–Party Compl. at ¶ 18), but it fails to plead the existence of any

contract between Overhill and Sky Chefs. As we will note, the evidence at trial reflects that the only indemnity contract was between Overhill and American Airlines.

damages as a result of allegedly ingesting the chicken entree ... that said damages were caused solely by the negligence, carelessness and recklessness of third-party defendant Overhill Farms, Inc. in their performance of their duties and responsibilities under its contract with American Airlines, Inc.

That as a result of third-party defendant Overhill Farms, Inc.'s negligence, carelessness and recklessness, defendant/third-party plaintiff LSG Sky Chefs has been damaged and continues to accrue damages ....

That third-party defendant Overhill Farms, Inc. is obligated to indemnify, defend and hold harmless defendant/third-party plaintiff LSG Sky Chefs consistent with the principles of contractual common law indemnification and contribution for any damages alleged to have been sustained by the plaintiff Monserrate Luna.

By reason of the foregoing, in the event that any judgment or verdict is recovered against the defendant/third-party plaintiff LSG Sky Chefs, the defendant/third-party plaintiff is entitled to contribution and indemnification from, over and against third-party defendant Overhill Farms, Inc.

(Third–Party Compl. ¶¶ 16–19)

As we have noted, no judgment or verdict was returned in favor of Ms. Luna; rather, both of her claims were dismissed and judgment entered in favor of defendants. Nonetheless, defendants pursue indemnification from Overhill for their litigation expenses.

*Analysis*

### A. *The Factual Issue: the Source of the Meal*

■ We first address the factual question, disputed by the parties, as to whether defendants have established by a preponderance of the evidence that the meal in question was supplied by Overhill Farms.

If not, defendants' indemnification claims, whatever their other merits or demerits, could not prevail. *See Niagara Frontier Transp. Auth. v. Tri–Delta Const. Corp.,* 107 A.D.2d 450, 452–53, 487 N.Y.S.2d 428 (4th Dep't) (indemnification clause did not encompass the actions of an entity not a party to the contract), *aff'd,* 65 N.Y.2d 1038, 494 N.Y.S.2d 695, 484 N.E.2d 1047 (1985).

We find, contrary to the contention of the third-party defendant, that the record amply supports the proposition that the meal in question originated with Overhill. The undisputed testimony by James Rudis, the President and CEO of Overhill, confirmed the existence of a Master Contract between American Airlines and Overhill, providing for the third-party defendant to supply a range of pre-cooked frozen meals to the airline for use on its flights. (Tr. at 218–19, 222–25, 227–30; Defs.' Ex. H). The documentary record and testimony of both Mr. Rudis and Brian Farinha, formerly Global Quality Manager of Sky Chefs (Tr. at 158–60), confirmed as well that among the meals covered by the contract and a contract supplement was a meal designated by the code 73EN189 and described in the contract documents as "chicken breast adobo". (Tr. at 180–83, 231–33, 235–36; Defs.' Ex. I). Furthermore, the "Air Serv" documents received in evidence and described by Mr. Farinha confirm that, consistent with the directives of the airline, Sky Chefs delivered 235 coach class meals to the aircraft used for Ms. Luna's flight. (Tr. at 168–69, 192–94; Defs.' Ex. G). Of those meals, sixty percent consisted of the chicken breast adobo meal and the balance were a penne pasta meal, also from Overhill Farms. (Tr. at 179, 183–84, 194; Defs.' Ex. B, C, D, G, N). Ms. Luna testified that she ordered the chicken meal and suffered injuries as a result of her encounter with a piece of a lizard. (Tr. at 85–88, 91, 94–98).

In seeking to disclaim any responsibility for supplying the dinner, Overhill Farms suggests that other meals (presumably from other suppliers) may have been delivered to the plane, and that Ms. Luna may have consumed one of these rather than the documented Overhill meals. This assertion is not supported by any probative evidence, first, there is no documentation or the loading of any such meals, even though the airline and Sky Chefs had in place a system that required such documentation of all passenger meals ordered for and loaded for each flight. (*See* Tr. at 168–71, 176–77, 178–79, 182–84, 186). Second, if Sky Chefs had deviated from the prescribed list of meals for that flight, it would have had to document that change with a so-called deviation letter, but Mr. Farinha testified that he searched for such a letter and found none. (Tr. at 195–96). Third, the number of documented coach-class meals delivered to the aircraft—235—exceeded the number of coach passengers on that flight—228—and thus there would have been no reason to include more meals, whether from another supplier or from Overhill. (Tr. at 192–94; Defs.' Ex. G). Fourth, the chicken meal, as described by one of the flight attendants, Alonso Bossio, was largely consistent with Mr. Rudis's description of the adobo chicken breast meal, which included a whole chicken breast accompanied by rice and a vegetable. *Compare* Tr. at 235, 240, 243–44 (Rudis description) *with* Tr. at 500–01, 528–29 (Bossio description).

At base, Overhill Farms' argument rests almost exclusively on the testimony of Ms. Luna, who reported that the meal she received consisted of cubed chicken pieces. (Tr. at 90, 154–55). Mr. Rudis, the President and CEO of Overhill Farms, testified that the chicken meals provided by Overhill for Ms. Luna's flight contained a whole breast of chicken (Tr. at 241–43), and that Overhill Farms did not sell any cubed-chicken meals (Tr. at 249–50), and thus the

third-party defendant suggests that Ms. Luna's description of her meal demonstrates that it was not from Overhill Farms.

The short answer to this contention is that this aspect of Ms. Luna's testimony—as is the case with much of her account of the flight—is simply not credible. As a general matter, she was plainly not a careful observer, but particularly so in this respect, as she admitted that she had not even looked at her meal while eating, focusing instead on a movie displayed on her television screen until she chewed on what she implausibly described as a piece of lizard. (Tr. at 85–86). In any event, the testimony of the flight attendant who actually served her—Mr. Bossio—was that he recalled distinctly that he had provided her the chicken dinner that evening, and that it included a whole breast rather than cubed chicken pieces. (Tr. 528–29). Indeed, Ms. Nora Saad, the purser on the flight, testified that in her twenty-two years as a flight attendant on American Airlines she had never seen or served a cubed chicken dinner (Tr. at 420), and Mr. Farinha testified that Sky Chefs did not purchase, cook, or serve any meals containing cubed chicken during the time in question. (Tr. at 191). Indeed, the only reference to a chicken meal ever served on American Airlines other than in the form of a whole chicken breast was a sliced chicken salad (Tr. at 261), but there is no question that Ms. Luna was not served such a salad.

In sum, the evidence overwhelmingly demonstrates that the meal in question was supplied by Overhill Farms.

### B. *The Availability of Common–Law Indemnification*

■ Both defendants now seek common-law indemnification from Overhill Farms. This effort is plainly misconceived

since the trial resulted in the jury's rejection of plaintiff's contention that the meal supplied by Overhill Farms was defective. Absent some fault by Overhill Farms, which has not been established, common-law indemnification is inappropriate.[3]

The difficulty with the defendants' position is underscored by their own characterization of the rationale for such an indemnity claim. As they write:

It is well-settled that the right to indemnification need not be based on an express contract, but may rest on an obligation implied under the common law. [ ] An implied right to indemnification may arise by virtue of the legal relationship between the indemnitor and indemnitee. [ ] In a manufacturer/distributor business relationship, it is well-settled that a seller or distributor of a defective product has an implied right of indemnification as against the manufacturer of the product. *See Godoy v. Abamaster of Miami*, 302 A.D.2d 57, 62, 754 N.Y.S.2d 301, 306 (2d Dept.2003) (where the Second Department found that the lower court should have determined the issue of a mere distributor's entitlement to indemnification as a matter of law where that party moved the product through the stream of commerce without the knowledge of the design defect that caused the plaintiff's injury and did not commit a primary nor affirmative act of negligence).

(Defs.' Mem. of Law in Further Support of Motion at 6–7 (internal citations omitted)). Defendants then go on to say, based on this explanation, that, "[b]ecause the de-

fendants/third party plaintiffs have shown by a preponderance of the evidence that the meal served to the plaintiff was supplied by Overhill Farms, Overhill Farms must indemnify them for the legal expenses incurred in the defense of this matter pursuant to basic principles of common law indemnification." (*Id.* at 7).

■ The problem with this analysis is that it ignores the essential requirement for such indemnification, which—as defendants themselves say in the quoted paragraph—is fault on the part of the indemnitor. As observed by the New York Court of Appeals: "[t]he obligation to indemnify arises from the equitable principle that the wrongdoer ought to bear responsibility for the loss." *North Star Reinsurance Corp. v. Continental Ins. Co.*, 82 N.Y.2d 281, 291, 604 N.Y.S.2d 510, 514, 624 N.E.2d 647 (1993) (citing Leflar, *Contribution and Indemnity Between Tortfeasors*, 81 U. Pa. L.Rev. 130, 146–48 (1932)). *Accord, e.g.*, *Chapel v. Mitchell*, 84 N.Y.2d 345, 347, 618 N.Y.S.2d 626, 627, 642 N.E.2d 1082 (1994) (stating that lower court "granted defendant's cross motion for summary judgment as against third-party defendant, finding that defendant was not actively negligent and, thus, was entitled to full indemnification."). Since the result of the trial precludes any contention that Overhill Farms was a wrongdoer, there is no basis in the common law for imposing on it an obligation of indemnification.

In an apparent effort to avoid this conclusion, defendants cite a case that they characterize as holding that "the right to

---

**3.** There is a further potential difficulty with this claim, as pursued now by American Airlines. The third-party complaint appears to assert a claim for common-law indemnification, if at all, only on behalf of Sky Chefs. If so, to permit the airline to recover on such a theory we would have to determine that the pleading should be retroactively amended, presumably on the basis that such a change

would conform the pleading to the evidence at trial, a form of relief permitted under Fed. R.Civ.P. 15(b)(2) if an unpled issue was tried "by the parties' express or implied consent." It is far from clear that such relief would be warranted in this case, but in view of our disposition of the merits of the claim by the airline, we need not address this question.

indemnification for counsel fees in the defense of the underlying action may be found to exist even where there is no money judgment against the indemnitee in that action." (Defs.' Mem. in Further Support of Motion at 7 (citing *Reynolds v. Ciminelli–Walbridge*, 261 A.D.2d 839, 840, 689 N.Y.S.2d 592, 593 (4th Dep't 1999))). This argument seriously misconstrues the case law that it cites.

In *Reynolds*, the plaintiff sued defendants under section 240 of the New York Labor Law for injuries suffered at a construction site. The defendants then impleaded Specialty Erectors, seeking common-law indemnification from it. On summary-judgment motions, the trial court granted judgment for plaintiff on liability against the defendants and then granted defendants' motion for summary judgment on their claim for common-law indemnification against the third-party defendant, but conditioned recovery of indemnification on the plaintiff receiving a money judgment against the defendants. *Reynolds*, 261 A.D.2d at 840, 689 N.Y.S.2d at 592. The parties subsequently entered into a settlement agreement that absolved the defendants of all liability, and defendants then sought indemnification for their litigation expenses from the third-party defendant. *Id.* at 840, 689 N.Y.S.2d at 592–93. The Appellate Division held that indemnification was proper even though no judgment had been entered against the defendants, as initially required by the trial court. *Id.* at 840, 689 N.Y.S.2d at 593.

This scenario does not reflect any holding that indemnification may be imposed on a party not at fault. Indeed, as explained in a later case, in *Reynolds* there had been "no issue as to the indemnitor's liability for the plaintiffs' injuries." *Nourse v. Fulton County Community Heritage Corp.*, 2 A.D.3d 1121, 1122, 769 N.Y.S.2d 341, 342 (3d Dep't 2003). All

that happened in *Reynolds* was that the indemnitor had settled with the plaintiff and absolved defendants of any liability, thus rendering "the only condition" on indemnification "inconsequential" and permitting the indemnitees to recover attorneys' fees. *Id.* at 1122–23, 769 N.Y.S.2d at 342. When there is no determination—whether by verdict, judgment or settlement—of fault by a purported indemnitor, indemnification is not permitted. *See, e.g., Espinoza v. Federated Dep't Stores, Inc.,* 73 A.D.3d 599, 600, 904 N.Y.S.2d 3, 4 (1st Dep't 2010) ("Since there has been no finding that negligence . . . was a cause of the . . . plaintiff's injuries, the . . . defendants are not entitled to indemnification for costs and attorney's fees . . . under either the common law . . . or the indemnification provision of their contract.") (citing, *inter alia, Edge Mgt. Consulting, Inc. v. Blank,* 25 A.D.3d 364, 366, 807 N.Y.S.2d 353, 357 (1st Dep't 2006), *leave dismissed,* 7 N.Y.3d 864, 824 N.Y.S.2d 608, 857 N.E.2d 1139 (2006)); *Yacovacci v. Shoprite Supermarket, Inc.,* 24 A.D.3d 539, 540–41, 808 N.Y.S.2d 284, 286 (2d Dep't 2005). As the court observed in *Yacovacci* in denying summary judgment for the putative indemnitee, the defendant's "right to . . . common-law indemnification . . . rests on a finding of [the third-party defendant]'s negligence and such negligence being a proximate cause of the plaintiff's injuries and [defendant]'s freedom from such negligence." *Yacovacci,* 24 A.D.3d at 541, 808 N.Y.S.2d at 286.

In this case Overhill has not been found either negligent or in breach of an implied warranty of fitness for intended use. Defendants are therefore not entitled to common-law indemnification from Overhill.

## C. Contractual Indemnification

Defendants now both seek judgment requiring indemnification from Overhill

based on an indemnification provision in the Master Contract between American Airlines and Overhill. Overhill resists on a variety of grounds. We address each of the disputes, albeit not necessarily in the order followed by the litigants.

### 1. *Does the Contract Authorize Indemnification After a Finding of No Liability by Defendants?*

■ The first question is whether the contractual provision requires indemnification even in the event that the trial results in a verdict for the defendants and against the plaintiff. (Third–Party Def.'s Mem. of Law at 5–6). We conclude that it does. A related issue is whether the third-party complaint should be read to embody an indemnification claim in such circumstances. (*Id.* at 5). We conclude that the pleading is properly so read.

The Master Contract was entered into between the airline and Overhill and stated that the airline, designated as the "buyer", "hereby offers to purchase from Overhill Farms, Inc."—designated as the "seller"— "the following articles under the terms and condition of this master contract, which includes the terms and conditions listed on the reverse side hereof and on attachment A 'American Airlines Food Product Data Sheet' and Attachment B 'Supplemental Terms and Conditions' and on the Schedule 'Exhibits and Attachments Thereto' (collectively referred to as the 'Master Contract')". (Defs.' Ex. H). The contract went on to provide for the airline or its "caterers" (a reference to Sky Chefs) to order from an attached list of meals to be provided by Overhill, and it specified procedures for delivery and payment. (*See* generally Defs.' Ex. H, at Attach. B). This contract, originally scheduled to end

as of October 31, 2002 (Defs.' Ex. H, at Attach. B ¶ 6), was apparently extended and supplemented by a contract supplement dated November 20, 2002, which added additional meals to the inventory from which the airline could order. (Defs. Ex. I).

One term of the Master Contract was titled "Indemnification" and provided as follows:

> You will defend, indemnify, and hold us harmless from and against any and all liabilities, damages, losses, claims, fines, penalties, assessments, demands, actions, suits, and judgments, including all fees, costs and expenses incidental thereto, that may be charged to, asserted against or incurred by us by reason of any loss, damage, or injury of any kind or nature whatsoever in any manner or to any extent resulting from or arising out of the articles or services covered by this order except to the extent resulting solely and directly from our gross negligence or wilful misconduct.

(Defs.' Ex. H, at second page ("Purchase Order Terms and Conditions") ¶ 12). On the same page, the term "us" is defined as referring to American Airlines. (*Id.* ¶ 1).[4] Defendants invoke this wording as the basis for their contractual indemnification claim.

Overhill contends that this language precludes indemnification if there was no finding of liability in the primary lawsuit. (Third–Party Def.'s Mem. of Law at 5). We disagree.

■ The coverage of an indemnification provision must be determined based on the wording of the specific agreement. *See,*

---

**4.** The paragraph following the indemnification provision requires that Overhill obtain liability insurance and include the airline as an additional insured. (Defs.' Ex. H, at sec-

ond page ¶ 13). The record does not reflect whether that was done, and this provision has not been a subject of the defendants' claims against Overhill.

*e.g., Hooper Assoc. v. AGS Computers,* 74 N.Y.2d 487, 492–93, 549 N.Y.S.2d 365, 367, 548 N.E.2d 903 (1989); *McCleary v. City of Glens Falls,* 32 A.D.3d 605, 609, 819 N.Y.S.2d 607, 611 (3d Dep't 2006). The wording of this provision is sufficiently broad to cover expenses incurred by American Airlines in successfully defending against claims asserted with regard to meals supplied by Overhill. Specifically, the provision requires Overhill to defend the airline and hold it harmless from "all claims [or] suits . . . asserted against" the airline—"including fees, costs and expenses"—"by reason of any loss, damage or injury . . . resulting from or arising out of the articles . . . covered by this order. . . ." (Defs.' Ex. H, at second page ¶ 12). Although this provision may not be free from at least some arguable ambiguity, neither side proffered any evidence at trial that would offer further enlightenment as to its meaning. Based simply on its text and evident purpose, we view the cited wording as plainly compelling Overhill to cover expenses, including fees, incurred in successfully defending any suit for injury or damages alleged to have arisen from meals supplied by Overhill. Indeed, it sufficiently resembles the wording of indemnification agreements found in other cases in which the courts have held that the indemnitor was obliged to cover litigation expenses of an indemnitee that prevailed in the primary lawsuit. *See, e.g., McCleary,* 32 A.D.3d at 609–10, 819 N.Y.S.2d at 611–12 (agreement to "defend, indemnify and hold harmless the County

. . . from any and all claims . . . causes of action, losses, expenses . . . costs . . . interests or losses, including attorneys' fees . . . which the County . . . may suffer as a result of . . . the Club's activities"); *Perchinsky v. State,* 232 A.D.2d 34, 39, 660 N.Y.S.2d 177, 181 (3d Dep't 1997) (indemnification "against all claims, actions, damages and costs"); *see also Di Perna v. American Broadcasting Cos.,* 200 A.D.2d 267, 269–71, 612 N.Y.S.2d 564, 566–67 (1st Dep't 1994).

In seeking to resist this result, Overhill argues that the indemnification clause is inapplicable because "[t]here as [sic] no loss, damage or injury sustained by the plaintiff," an argument for which Overhill cites *Nickerson v. City of New York,* 309 A.D.2d 588, 765 N.Y.S.2d 510 (1st Dep't 2003). (Third–Party Def.'s Mem. of Law at 6). As noted, however, the wording of the provision is broad enough to justify the conclusion that it covers expenses incurred in a successful defense, since the term "loss, damage or injury" is properly read as modifying, inter alia, claims and suits asserted against American Airlines,[5] and thus indicating that indemnification is triggered by suits in which the plaintiff claims "loss, damage or injury", whether or not the claim is upheld. Moreover, the cited case has no apparent relevance to the question that we confront. The only issue raised on the appeal in *Nickerson,* as reflected in the appellate briefs, *see* Reply Brief for Third–Party Defendant–Appellant at 2, *Nickerson v. City of New York,*

---

5. Indeed, were it not, the words "claims" and "suits" would amount to mere surplusage, a result that would contravene standard canons of interpretation. *See, e.g., Beal Sav. Bank v. Sommer,* 8 N.Y.3d 318, 324, 834 N.Y.S.2d 44, 47–48, 865 N.E.2d 1210 (2007) ("A reading of the contract should not render any portion meaningless.") (citing cases); *Lawyers' Fund for Client Protection of State of New York v. Bank Leumi Trust Co. of New York,* 94 N.Y.2d 398, 404, 706 N.Y.S.2d 66, 69–70, 727 N.E.2d

563 (2000) (interpretation which renders contractual language superfluous is "unsupportable under standard principles of contract interpretation"); *Suffolk Cnty. Water Auth. v. Vill. of Greenport,* 21 A.D.3d 947, 948, 800 N.Y.S.2d 767, 768 (2d Dep't 2005) ("an interpretation which renders language in the contract superfluous is unsupportable.") (citing *Lawyers' Fund,* 94 N.Y.2d at 404, 706 N.Y.S.2d at 69–70, 727 N.E.2d 563).

309 A.D.2d 588, 765 N.Y.S.2d 510 (1st Dep't 2003), 2003 WL 25588610, at *2, was whether the Labor Law and negligence claims of the plaintiffs were facially merit- less, and that is all that the court decided when it held that the third-party indemni- fication claim should be dismissed. *Id.* at 588–89, 765 N.Y.S.2d at 511. Indeed, the court did not even specify whether the indemnification claim of the defendant was based on contract or common law, and it did not mention the wording of any possi- ble contractual indemnification provision. *Id.* at 588–89, 765 N.Y.S.2d at 511.

Overhill also attacks the enforceability of the indemnification provision, asserting in very general terms that it is "vague, ambiguous and overbroad." (Third–Party Def.'s Mem. of Law at 8). The implication of this assertion is that the agreement is invalid, albeit for reasons that are obscure. As we have seen, indemnification provi- sions of this general type—which impose their obligations on an indemnitor to cover expenses incurred by the indemnitee in defending itself against meritless charges—are routinely enforced.

To the extent that Overhill asserts that the agreement is ambiguous [6]—that is, that reasonable triers of fact could read it in two different ways, *see Bana Elec. Corp. v. Bethpage Union Free School Dist.*, 76 A.D.3d 987, 988, 907 N.Y.S.2d 693, 694 (2d Dep't 2010) (citing cases)—such a finding merely requires that the interpretation of

the contract be treated as a triable issue of fact, *id.* at 988, 907 N.Y.S.2d at 694, and in this case we are making our findings as to its meaning as a matter of fact rather than law. Because neither party sought sum- mary judgment as to the scope of the provision, that question was presented as a triable issue, and it was in fact tried even though the parties abjured proffering any evidence at trial beyond the text of the agreement. In any event, ambiguity does not translate into unenforceability, and since we discern the clearly more plausible meaning to support the airline's indemnifi- cation claim, the agreement is enforceable in this case.[7]

Insofar as Overhill argues that the in- demnification provision is overbroad, we understand it to be saying that the provi- sion, as read by the airline, would allow American Airlines to receive indemnifica- tion even if the airline had itself been at fault. (Third–Party Def.'s Mem. of Law at 8). Putting to one side the question of whether, in such circumstances, the pro- vision would be unenforceable, we note that this scenario not only is irrelevant here but also misconstrues the provision. The court dismissed, as a matter of law, plaintiff's negligence claim against the airline. (Tr. at 548). Hence, defendants were found to have engaged in no mis- conduct, and Overhill's concern that the indemnification provision would allow a wrongdoer to escape liability is unfound-

---

**6.** Overhill's reference to vagueness may amount to a repetition of its assertion that the agreement was ambiguous. In any event we do not address the point separately other than to note that, even if ambiguous, the provision was not vague.

**7.** Some courts have observed that an indem- nification provision must be shown, from its language and context, to clearly require in- demnification for such a claim to be upheld. *E.g., Canela v. TLH 140 Perry Street, LLC,* 47 A.D.3d 743, 744, 849 N.Y.S.2d 658, 659 (2d Dep't 2008) (citing cases). Insofar as that

reference may reflect an elevated standard under New York law, we find that the perti- nent provision here reflects the required clari- ty. In so concluding, we note that care must be taken not to confuse this standard with the more elevated requirement of "unmistakable cl[arity]" in an indemnification agreement to allow recovery of fees incurred in a suit be- tween the indemnitee and the indemnitor. *See, e.g., Hooper Assocs.,* 74 N.Y.2d at 492, 549 N.Y.S.2d at 367, 548 N.E.2d 903; *Di Perna,* 200 A.D.2d at 270 n. 3, 612 N.Y.S.2d at 567 n. 3.

ed. Furthermore, the indemnification provision explicitly provides that no indemnification is required if the injury, loss or expenses "result[ed] solely and directly from [the airline's] gross negligence or willful misconduct." (Defs.' Ex. H, at second page ¶ 12). Thus the scenario suggested by Overhill does not rescue its case.

### 2. Does the Contract Authorize Indemnification of Attorney's Fees?

■ Overhill also argues that the provision in question is limited to the payment of expenses other than attorney's fees because it does not explicitly refer to such fees. (Third–Party Def.'s Mem. of Law at 8). The short answer to this contention is that the provision specifically covers "fees", which is plainly a reference to the fees charged by an attorney. Moreover, even in the absence of this explicit term, under New York law the provision would be interpreted as covering legal fees. *See, e.g., Perchinsky,* 232 A.D.2d at 39, 660 N.Y.S.2d at 181 (citing cases); *Di Perna,* 200 A.D.2d at 269–70 n. 3, 612 N.Y.S.2d at 567 n. 3 (citing cases).

### 3. Does the Contract Authorize Indemnification for Expenses in Seeking Indemnification?

■ Notwithstanding this conclusion, we must address a further question raised by Overhill when it argues that even if the agreement contemplates payment of fees, any such payment should be limited to fees incurred in defending against the plaintiff's claims, and not counsel's litigative efforts in pursuing the airline's third-party claims against Overhill. (*See* Third–Party Def.'s Mem. of Law at 8). We are not clear as to whether defendants disagree with this proposition, and hence assess it here.

There is a line of decisions by several departments of the Appellate Division holding that, as a matter of law, contractual indemnification for litigation expenses is limited to the indemnitee's defense against the primary suit and does not encompass expenses in pursuing indemnification from the indemnitee. *See, e.g., Klock v. Grosodonia,* 251 A.D.2d 1050, 674 N.Y.S.2d 187, 187–88 (4th Dep't 1998); *Perchinsky,* 232 A.D.2d at 39, 660 N.Y.S.2d at 181. If so, American Airlines must be limited to recovering its expenses in defense against the claims of Ms. Luna. It is not clear, however, whether these decisions in fact accurately reflect the law in New York. In this regard we note that the New York Court of Appeals has at least implied that contractual indemnification might be broader in this respect than common-law indemnification, which is clearly barred for expenses in pursuing the indemnitor. *See Chapel,* 84 N.Y.2d at 348, 618 N.Y.S.2d at 627, 642 N.E.2d 1082 (distinguishing *Gray Mfg. Co. v. Pathe Indus.,* 33 A.D.2d 739, 305 N.Y.S.2d 794 (1st Dep't 1969), *aff'd,* 26 N.Y.2d 1045, 312 N.Y.S.2d 200, 260 N.E.2d 821 (1970)). We need not resolve this conundrum here, however, because even if such a recovery is theoretically available in some circumstances, it cannot be awarded in this case.

■ In substance, if defendants are seeking coverage from Overhill of the expenses of their litigation against Overhill, they would be asking for indemnification for costs and fees incurred in suing their indemnitor. The Court of Appeals has held, however, that in the case of an indemnitee seeking contractual indemnification for fees and expenses incurred in litigating against the indemnitor, the agreement must make "unmistakably clear" that it was the intent of the parties to provide for such relief. *Hooper,* 74 N.Y.2d at 492, 549 N.Y.S.2d at 367, 548 N.E.2d 903 (citing cases). This demanding standard is imposed because "a promise by one party to a contract to indemnify the other for attorney's fees in-

curred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees ...." *Id.* at 492, 549 N.Y.S.2d at 367, 548 N.E.2d 903. *Accord, e.g., Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 199 (2d Cir. 2003); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20–21 (2d Cir.1996).

In applying this standard of unmistakable clarity, the courts have generally declined to infer indemnification obligations arising from an indemnitee/indemnitor suit if the contractual language does not expressly refer to or explicitly contemplate such circumstances and the context does not suggest that the contracting parties were specifically concerned with prospective litigation between themselves. We briefly summarize the decisional patterns pertinent to our assessment.

 When an indemnification agreement contains provisions that appear to be inapplicable to suits between the contracting parties—such as requiring that notice of a claim be given to the indemnitor or allowing the indemnitor to assume the indemnitee's defense—the courts have concluded that the contract does not evidence an unmistakably clear intent to indemnify attorney's fees incurred in a lawsuit between the contracting parties. *See, e.g., Hooper Assocs., Ltd.,* 74 N.Y.2d at 492–93, 549 N.Y.S.2d at 367, 548 N.E.2d 903; *Oscar Gruss & Son, Inc.,* 337 F.3d at 200; *India.com, Inc. v. Dalal,* 2009 WL 5171734, *6 (S.D.N.Y. Dec. 30, 2009); *Nathan v. Cooper,* 2007 WL 4352705, *5 (S.D.N.Y. Dec. 12, 2007); *Sequa Corp. v. Gelmin,* 851 F.Supp. 106, 111 (S.D.N.Y. 1994); *see also Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.,* 458 F.Supp.2d 178, 188 (S.D.N.Y.2006) (determining indemnification clause did not cover damage claim by contracting party in

part because it would render another clause in contract meaningless).

 In contrast, when the language of an indemnification provision specifically evidences the parties' intent to cover claims by contracting parties, indemnification for suits against the indemnitor will be enforced. For instance, when confronted with indemnification provisions that include both broad indemnity clauses and narrower clauses that specifically target third-party claims, courts have determined that the broad provisions cover claims between the contracting parties, thereby ensuring that neither clause is superfluous. *See, e.g., Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 178–79 (2d Cir.2005); *Promuto v. Waste Mgmt., Inc.,* 44 F.Supp.2d 628, 650–52 (S.D.N.Y.1999) (where notice-of-claim and assumption-of-defense provisions explicitly apply only to indemnity of third-party claims, broader indemnification provision applied to claims by contracting parties); *Sagittarius Broad. Corp. v. Evergreen Media Corp.,* 243 A.D.2d 325, 326, 663 N.Y.S.2d 160, 161 (1st Dep't 1997); *see also Pfizer, Inc. v. Stryker Corp.,* 348 F.Supp.2d 131, 146 (S.D.N.Y.2004) (where special notice-of-claim, assumption-of-defense and counsel-selection provisions apply only to third-party claims, broad indemnification provision covers claims by contracting parties).

 Absent specific contractual language authorizing indemnification in suits between the contracting parties, the courts may still determine that the parties intended for such indemnification based on clear contextual evidence. Thus the court will enforce such an obligation if it is apparent that at the time of contracting the parties had no reason to anticipate the possibility of the indemnitee being faced with third-party claims. Thus, in *Breed, Abbott & Morgan v. Hulko,* the New York

Court of Appeals determined that an escrow agent must be indemnified for expenses incurred in litigation with a party to the escrow agreement because, at the time the agreement was drafted, there was no potential for third-party claims. The Court concluded that "it is difficult, if not impossible, to ascertain for what it was that the parties had agreed to indemnify the escrowee" if not claims by contracting parties. 74 N.Y.2d 686, 687, 543 N.Y.S.2d 373, 374, 541 N.E.2d 402 (1989) (internal quotation marks omitted); *accord, Corazza v. Jacobs*, 277 A.D.2d 52, 53, 717 N.Y.S.2d 2, 3 (1st Dep't 2000) (escrow agent in real estate transaction covered by indemnification provision that required parties to indemnify agent for attorney's fees arising from duties as agent); *see also Hooper Assocs., Ltd.*, 74 N.Y.2d at 493–94, 549 N.Y.S.2d at 368, 548 N.E.2d 903 (distinguishing *Breed, Abbott & Morgan* because the court in that case could not conceive of any possible third-party claims against the escrow agent, but "[i]n this case however, the potential existed for third-party actions.").

■ By comparison, if third-party claims were possible at the time of contracting and the contractual language did not evidence the parties' intent regarding the indemnification of attorney's fees incurred in suits between them, the courts have refused to award such expenses as indemnification. *See, e.g., Bridgestone/Firestone, Inc.*, 98 F.3d at 21 (where indemnification clause is not "unmistakably clear" that it covers counsel fees in breach-of-contract action and "may easily be read as limited to third party actions", fees not indemnified); *Coastal Power Int'l, Ltd. v. Transcon. Capital Corp.*, 10 F.Supp.2d 345, 371 (S.D.N.Y.1998) (although indemnification clause could be interpreted to cover costs of litigation by contracting parties, absent "language clearly evidencing an intention that the loser in a suit for breach of the [contract] was intended to pay the

winner's attorneys' fees," those fees are not indemnified); *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 955 F.Supp. 203, 218–19 (S.D.N.Y.1997) (indemnification clause does not cover costs of litigation between parties because it is not "unmistakably clear" that they are covered, and provision "may easily be read to protect [party] from claims to its rights and interests by third parties") (quoting *Bridgestone/Firestone, Inc.*, 98 F.3d at 21); *Bourne Co. v. MPL Commc'ns, Inc.*, 751 F.Supp. 55, 57–58 (S.D.N.Y.1990) (indemnification clause not "unmistakably clear" that costs of litigation between parties covered despite reference to breach-of-contract actions, when clause is typical of type that contemplates indemnity for third-party claims). In short, if the contracting parties could have anticipated that they would be subject to third-party claims, courts apply a presumption against concluding that their indemnification clause covers litigation costs incurred in the course of resolving claims between those contracting parties. *See Broadhurst Invs., LP v. Bank of New York Mellon*, 2009 WL 4906096, *3 (S.D.N.Y. Dec. 14, 2009) (because potential for third-party claims exists, attorneys' fees incurred in litigation between parties not covered by general language of indemnification provision); *Nathan*, 2007 WL 4352705, at *5 (where real estate purchase contract provides that indemnification provision applies to brokers' third-party claims for lost commissions, attorneys' fees in suit between parties not indemnified).

In this case the language of the indemnification provision was both straightforward and typical of agreements that contemplate the prospect of third-party litigation. *See, e.g., Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d at 367, 548 N.E.2d 903 (noting that "the clause in this agreement ... is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party

claim"). Most notably, it obligates Overhill to defend the airline, a provision that reflects an assumption that the airline will be involved in third-party litigation. *See, e.g., Goshawk Dedicated Ltd. v. Bank of New York,* 2010 WL 1029547, *8 (S.D.N.Y. March 15, 2010) (citing cases). Moreover the agreement, by its terms, covers expenses incurred in lawsuits "by reason of any loss, damage, or injury of any kind or nature whatsoever in any manner or to any extent resulting from or arising out of the articles or services covered by this order that may be charged to, asserted against or incurred by us except to the extent resulting and directly from our gross negligence or wilful misconduct." This language also clearly contemplates lawsuits by people exposed to the meals that Overhill was contracting to supply to the airline for its passengers.

The contract also provided for Overhill to procure liability insurance that would extend to the airline as an additional covered party. Plainly this too reflects the anticipation of the airline that it may be exposed to liability from suits initiated by passengers on its flights, and is therefore inconsistent with the notion that the contract unmistakably covers the expense of litigation between the airline and Overhill.

Apart from the language of the indemnification provision, the context plainly reflects anticipation by the airline of potential suits by non-parties to the contract. The Master Contract was for the provision to the airline of meals for consumption by its passengers. Obviously, the indemnification agreement was, in whole or in part, required by the airline in anticipation that some of the airline's customers might well complain, as did Ms. Luna, about the quality and effects of the food.

In sum, we conclude that contractual indemnification of American Airlines is limited to the expenses that it incurred in defending against plaintiff's claims.

### 4. The Status of Sky Chefs' Apparent Claim for Contractual Indemnification

The final issue that we encounter on the present application by defendants concerns the status of a claim by Sky Chefs for contractual indemnification by Overhill. This question arises because Overhill observed in its opposition papers that it has reason to believe that a substantial part, if not all, of American's fees and other litigation-related expenses were covered by Sky Chefs, possibly as a result of an indemnification agreement between those two entities. (Third–Party Def.'s Mem. of Law at 9). It therefore argued that insofar as the airline has received reimbursement from its co-defendant, Overhill cannot be obliged to pay for the same expenses. (*Id.*). In defendants' reply, they do not directly address the factual contention of Overhill regarding the arrangement between them, though they impliedly confirm that some of the expenses, if not all, were covered by Sky Chefs. They do so in arguing that under these circumstances Sky Chefs may recover whatever expenses it paid, presumably on behalf of American Airlines as well as itself, because, by virtue of its payments, it is now the true "interested party". (Defs.' Mem. of Law in Further Support of Motion at 12 (citing *Pennsylvania Gen. Ins. Co. v. Austin Powder Co.,* 68 N.Y.2d 465, 470, 510 N.Y.S.2d 67, 69–70, 502 N.E.2d 982 (1986))).

This argument is well wide of the mark. We start with the premise that the Master Contract, which includes the indemnification provision, is solely between Overhill and American Airlines. As noted, it is signed solely by and on behalf of those two entities (Defs.' Ex. H, at first page), and its governing terms—insofar as they define rights and obligations—limit themselves to the rights and obligations of Ov-

erhill and American Airlines. Most pertinently, the indemnification provision, found in paragraph 12, prescribes a set of obligation by Overhill to "us", which term is defined in paragraph 1 as referring solely to American Airlines. (Defs.' Ex. H, at second page ¶¶ 1, 12). Thus, on its face the contract provides no right of indemnification to Sky Chefs.[8] Indeed, defendants' current argument on the point implicitly concedes the fact and seeks instead to create standing and a contractual indemnification right in Sky Chefs by identifying that company as the "real interested party," presumably by virtue of its payment of some portion of the litigation expenses of American Airlines. This argument will not fly.

The case on which defendants rely for the concept of an interested party does not assist them. The suit was filed by an insurer, Pennsylvania General Insurance Company, as subrogee on a claim for property damage from its insured. The claim was for damage to the insured's vehicle from an explosion allegedly caused by the mishandling of explosives in a truck that had been leased by defendant Bison Ford Truck Sales to defendant Austin Powder and driven by Austin's employee Rinker. *Pennsylvania Gen. Ins. Co.*, 68 N.Y.2d at 468, 510 N.Y.S.2d at 68–69, 502 N.E.2d 982. Bison had an insurance policy with Liberty Mutual and had included Austin and Rinker as additional insureds under the policy. *Id.* at 468–69, 510 N.Y.S.2d at

69, 502 N.E.2d 982. The rental agreement between Bison and Austin also included an indemnification provision in favor of Bison, and in the course of the lawsuit Bison asserted a cross-claim for contractual indemnification against Austin. *Id.* at 469, 510 N.Y.S.2d at 69, 502 N.E.2d 982.

The primary claim by Pennsylvania General was settled, with Liberty Mutual paying the full amount agreed to, *id.* at 469, 510 N.Y.S.2d at 69, 502 N.E.2d 982, thus leaving the question of indemnification for the court to adjudicate. The Court of Appeals held that the indemnification claim failed, and its analysis demonstrates that its reference to Liberty Mutual as an "interested party"—the passage quoted by defendants—does not assist Sky Chefs.

Noting that Bison had suffered no out-of-pocket loss because its insurer had paid the full amount of the settlement that disposed of the plaintiff's claim, the panel observed that Bison therefore had no indemnification claim against Austin. Under this scenario, it stated, "to the extent that Bison Ford is seeking indemnification, its cross claim must be regarded as one asserted on behalf of the insurer, the real party in interest here." 68 N.Y.2d at 470, 510 N.Y.S.2d at 69–70, 502 N.E.2d 982. This was an allusion to section 1004 of the New York Civil Practice Law and Rules, which permits *inter alia* an insured in specified circumstances to assert a subrogated claim on behalf of its insurer without naming the insurer as a party.[9] Thus, in

---

**8.** The only references in the contract to Sky Chefs are found in the contract supplement, which contains several provisions specifying that certain aspects of the performance of the contract—for example, orders for specific meals or the receipt of shipments—may be made by either the airline or its caterers. (*See generally* Defs.' Ex. H, at Attach. B). This provision does not create any substantive rights in Sky Chefs, and the contract's use of the term "caterers" in those provisions underscores the fact that the absence of any refer-

ence either to the "caterer" or to Sky Chefs in the contractual definition of "us" limits the scope of the indemnification provision to the airline. The lack of any indemnification provision in the contract supplement further reinforces the fact that there was no indemnification agreement between Overhill and Sky Chefs.

**9.** Indeed, in a footnote to the sentence quoted here by defendants, the Court made this very point, citing CPLR section 1004 and noting that the Liberty Mutual policy for Bison ex-

the quoted sentence the Court was not purporting to determine that Liberty had a right to indemnification by virtue of its payment of the settlement for Bison, but rather that the indemnification claim, if asserted on behalf of the insurer, was one to which Liberty had been subrogated.

Finally, the Court proceeded to reject the ostensibly subrogated claim by Liberty on the basis of the principle, long recognized by many courts, that an insurer may not seek indemnification from its own insured. This principle applied in that case because Austin had been named as an additional insured on Bison's Liberty policy. As the Court observed:

> Viewed in that light [that is, as a subrogated claim on behalf of the insurer], the cross claim cannot be sustained because it represents, in effect, an attempt by the insurer to recover from its other insured, Austin Powder, for the very loss for which Austin Powder was supposed to be covered. Such an unseemly result would not be consistent with the equitable principles that govern subrogation claims.

Id. at 470–71, 510 N.Y.S.2d at 70, 502 N.E.2d 982.

This analysis leads ineluctably to a rejection of the effort by Sky Chefs to pursue a recovery based on a theory of contractual indemnification. First, as we have noted, the complaint asserts the contractual indemnification claim solely on behalf of American Airlines. While this pleading might be rescued if (1) Sky Chefs were deemed an insurer within the meaning of CPLR section 1004 and (2) American Airlines had executed a subrogation receipt or

other equivalent document in favor of Sky Chefs, defendants have made no effort to demonstrate satisfaction of these requirements. Indeed, the record is entirely silent as to the existence or terms of any contract between the two defendants that would create an obligation on the part of Sky Chefs to insure the airline for the pertinent loss or expense or that would require the airline to subrogate its claim for indemnification to Sky Chefs, and the record is equally silent as to any execution by the airline of a document subrogating that claim to Sky Chefs. Accordingly, as a matter of pleading, the claim must be deemed to have been asserted only on behalf of American Airlines, see, e.g., id. at 470 n. 3, 510 N.Y.S.2d at 70 n. 3, 502 N.E.2d 982, and in any event as a matter of proof defendants have failed to demonstrate even a colorable basis for Sky Chefs to assert the claim by way of subrogation.

 Second, and still more significantly, even if defendants could be shown to have undertaken the procedural steps necessary to subrogate the claim from American Airlines to its caterer, the court has no basis to recognize such a claim by Sky Chefs. As noted, subrogation is an equitable remedy, and the pertinent criteria for its recognition are absent here. As the New York Court of Appeals has observed:

> Subrogation, an equitable doctrine, entitles an insurer to "stand in the shoes" of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse [ ]. Subrogation allocates responsibility for the loss to the

---

pressly required subrogation of any claim for which the insurer provided payment. Id. at 470 n. 3, 510 N.Y.S.2d at 70 n. 3, 502 N.E.2d 982. The Court went on to observe that the record before it left unclear whether Bison had actually executed a subrogation receipt or equivalent document—as required by the stat-

ute—and thus the Court could not determine at that stage whether Bison was in fact asserting the indemnification claim on behalf of Liberty or rather on its own behalf. Id. at 470 n. 3, 510 N.Y.S.2d at 70 n. 3, 502 N.E.2d 982.

person who in equity and good conscience ought to pay it, in the interest of avoiding absolution of a wrongdoer from liability simply because the insured had the foresight to procure insurance coverage [ ].

*North Star Reinsurance Corp.*, 82 N.Y.2d at 294, 604 N.Y.S.2d at 516, 624 N.E.2d 647 (internal citations omitted). *See also Pennsylvania General Ins. Co.*, 68 N.Y.2d at 471, 510 N.Y.S.2d at 70, 502 N.E.2d 982 ("The insurer's right of subrogation, long recognized as a matter of equity, has traditionally been applied to claims against third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.") (citations omitted).

In short, subrogation is permitted to allow the insurer to assert a claim against the wrongdoer who committed the act that caused the insured loss. In this case, however, Overhill cannot be deemed a wrongdoer and plainly cannot be faulted as having caused the loss—in pertinent terms, the expense of the litigation—since the jury found that the meal that it supplied had not been shown to have been unfit for human consumption. Necessarily, then, equity does not permit us to recognize any basis for Sky Chefs, which was not a party to the indemnification agreement, to pursue a claim against Overhill for such relief.[10]

Given this state of affairs, and in the absence of any evidence as to whether Sky Chefs made payments of litigation expenses on behalf of American Airlines,

much less the amount, we cannot rule as to the precise effect of the foregoing analysis on the relief to which the airline may be entitled vis-a-vis Overhill. The proper approach, however, is reflected in a case prominently cited by defendants. In *Di Perna v. American Broadcasting Cos.*, a personal-injury action by a construction worker in which the jury returned a defendant's verdict, the Appellate Division upheld the right of ABC, the defendant owner of the construction site, to pursue contractual indemnification for litigation expenses from the general contractor. Moreover, it rejected the general contractor's argument that ABC had elected an exclusive alternative remedy when it commenced a separate lawsuit against the general contractor's insurer for the same relief.[11] The court observed:

> The contractual obligations of Corinno Civetta [the general contractor] and the insurers ... are separate and distinct, each supported by independent and different consideration. Corinno Civetta's obligation to indemnify ABC, bargained and paid for as part of its contract with Lehrer McGovern, as agent for ABC, has nothing to do with the liability insurers' obligation, in consideration of a premium paid to them, to defend and indemnify ABC, which is separately enforceable.

*Di Perna*, 200 A.D.2d at 271, 612 N.Y.S.2d at 567–68. Then, in language directly pertinent to our case, the court observed that, "[a]s ABC recognizes, there is no possibili-

---

**10.** We note that defendants have also neither pled nor proven, nor even argued, that Sky Chefs was a third-party beneficiary of the Master Contract between American Airlines and Overhill. Hence we need not discuss such a theory in this case. *See* CPLR § 1004 (referring to third-party beneficiary as not being required to be joined in a pleading); *see generally State of California Pub. Emp. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35, 718 N.Y.S.2d 256, 259–60, 741

N.E.2d 101 (2000); *compare Edge Mgmt. Consulting, Inc. v. Blank*, 25 A.D.3d 364, 367–69, 807 N.Y.S.2d 353, 357–59 (1st Dep't 2006).

**11.** The police issued to the general contractor apparently included ABC as an additional insured, presumably a requirement by ABC when its agent hired the general contractor. *Di Perna*, 200 A.D.2d at 270–71, 612 N.Y.S.2d at 567.

ty of a double recovery; each obligor would have a setoff for the amount paid by the other." *Id.* at 271, 612 N.Y.S.2d at 568.

In short, to the extent that Sky Chefs may have paid expenses that would otherwise be payable under the indemnification obligation undertaken by Overhill, the third-party defendant will have a right of setoff.

5. *Procedure for Calculation of the Amount Owed to American Airlines*

As for the amount of expenses for which Overhill must indemnify American Airlines, that will be determined on an evidentiary record, to be established in the first instance by affidavits with appropriate documentation, including contemporaneous time-records in the case of fees, as well as a memorandum of law to the extent needed. Initial papers are to be served and filed by American Airlines by January 14, 2011. Responding papers by Overhill are to be served and filed by January 21, 2011, with reply papers due by January 28, 2011.

## CONCLUSION

For the reasons stated, the third-party claims of defendants for common-law indemnification from Overhill Farms are dismissed, as is the application by LSG Sky Chefs for contractual indemnification. The application by American Airlines for contractual indemnification is granted to the extent that we have outlined. The parties are to comply with the briefing schedule that we have specified.

**SO ORDERED.**